788 F.2d 973
 Jacqueline DAVIS, Mary E. Spencer, Patricia De Franzo, and
Peggy Staton, on behalf of themselves and all
others similarly situated, Appellants,
v.
William L. LUKHARD, individually and in his capacity as
Commissioner of the Virginia Department of Social Services,
and Margaret M. Heckler, Secretary of the Department of
Health and Human Services, Appellees.
Peggy STATON, Ethel Shepard, and Alberta Shields, on behalf
of themselves and all others similarly situated, Appellants,
v.
William L. LUKHARD, individually and in his capacity as
Commissioner of the Virginia Department of Social Services,
and Margaret M. Heckler, individually and in her capacity as
the Secretary of the Department of Health and Human
Services, Appellees.
 Nos. 84-2059, 85-1447.
 United States Court of Appeals,
Fourth Circuit.
 Argued July 29, 1985.
Decided April 8, 1986.
Rehearing and Rehearing En Banc Denied May 5, 1986.
 
 Edward M. Wayland, Charlottesville, Va. (Charlottesville-Albemarle Legal Aid Society, James S. Ellenson, Newport News, Va., Legal Aid Center for the Eastern Shore of Virginia, Martin Wegbreit, Conway, S.C., Client Centered Legal Services of Southwest Virginia, Inc., Jill A. Hanken, Charleston, S.C., Virginia Poverty Law Center, on brief), for appellants.
 Robert W. Jaspen, Asst. U.S. Atty., John A. Rupp, Richmond, Va. (Gerald Baliles, Atty. Gen., Thomas J. Czelusta, Asst. Atty. Gen., Richmond, Va., Elsie L. Munsell, U.S. Atty., Alexandria, Va., James C. Newman, Acting Regional Atty., Diane C. Moskal, Asst. Regional Atty., Philadelphia, Pa., on brief), for appellees.
 Before WIDENER, CHAPMAN and SNEEDEN,* Circuit Judges.
 WIDENER, Circuit Judge:
 
 
 1
 These appeals involve the propriety of the district court's interpretations of certain recent amendments to the Aid to Dependent Children (ADC) program. In Davis, the district court decided that in passing the Omnibus Budget Reform Act of 1981, Congress intended that every resource owned by a family receiving aid under the program, regardless of any particular resource's actual availability or liquidity, be counted in computing that family's eligibility for ADC benefits. Davis v. Lukhard, 591 F.Supp. 319 (E.D.Va.1984). By so holding, the district court in Davis upheld federal and Virginia ADC regulations which did not provide for a grace period during which ADC applicants or recipients could dispose of nonliquid excess resources without losing their ADC eligibility. Id. at 326-27. In Staton v. Lukhard, the district court decided that in passing the Deficit Reduction Act of 1984 (DEFRA), Congress intended to incorporate a limited grace period provision into the ADC eligibility requirements under which those families with hard-to-liquidate resources would be given a limited amount of time, the extent of which the Secretary of Health and Human Services (HHS) would set, to liquidate those resources or lose their eligibility for ADC benefits. In so holding, the district court upheld certain federal and Virginia ADC regulations under which the Virginia Department of Social Services (VDSS) had terminated the plaintiffs' eligibility for ADC benefits due to their failure to dispose of excess resources during the established grace period. The district court also upheld VDSS's actions seeking immediate repayment of those ADC payments made to the plaintiffs during their respective grace periods, when plaintiffs had failed to dispose of the resources in question.
 
 
 2
 On appeal, the plaintiffs in Davis contend, among other things, that by upholding the state and federal regulations in question, the district court abrogated the longstanding availability principle by which they say Congress implicitly required state agencies administering the ADC program to count in eligibility determinations only those resources currently available to ADC recipients or applicants to meet their immediate needs. The plaintiffs in Staton contend that the district court misconstrued Congressional intent behind DEFRA and erroneously upheld the state and federal regulations that allowed respondents to terminate appellants' ADC eligibility and seek repayment of benefits paid during appellants' grace period immediately upon expiration of the grace period. We find the issues in Davis to be moot and vacate the judgment below. We find partial merit in the appellants' contentions in Staton and affirm in part and vacate and remand in part for further proceedings not inconsistent with this opinion.
 
 I.
 
 3
 Congress designed the ADC program to provide financial assistance to needy dependent children and the parents or relatives who live with and care for them. See Shea v. Vialpando, 416 U.S. 251, 253, 94 S.Ct. 1746, 1750, 40 L.Ed.2d 120 (1974). The program is "based on a scheme of cooperative federalism." King v. Smith, 392 U.S. 309, 316, 88 S.Ct. 2128, 2133, 20 L.Ed.2d 1118 (1968). The federal government finances the program, on a matching fund basis, with participating States submitting administrative plans that must conform with applicable federal statutes and with the regulations that the Secretary of HHS promulgates thereunder. See 42 U.S.C. Secs. 602 & 603. Thus, the States administer the ADC program with funding, direction, and oversight from the federal government.
 
 
 4
 To determine a family's eligibility for benefits under the ADC program, the state agency administering the program, in Virginia, VDSS, compares the family's income to a standard of need and also measures the family's resources against a standardized limit. See Schrader v. Idaho Dep't of Health and Welfare, 768 F.2d 1107, 1109 (9th Cir.1985). Prior to 1981, the Department of HHS had established by regulation a national maximum limit of $2,000 on the total amount of resources that a family could own and still qualify for ADC benefits. In 1981, as part of the Omnibus Budget Reconciliation Act (OBRA), Pub.L. No. 97-35, Sec. 2302, 95 Stat. 357, 844 (amending section 402(a)(7) of the Social Security Act, 42 U.S.C. Sec. 602(a)(7)), Congress established a new statutory resource limitation of $1000 on the value of resources that a family could own and remain eligible for ADC benefits.[1] In passing OBRA, Congress did not explicitly address the issue of grace periods for the disposal of nonliquid assets.[2]
 
 
 5
 In February 1982, the Department of HHS promulgated regulations implementing the changes that OBRA had supposedly made in the ADC program. See Aid to Families with Dependent Children; Final Rule, 47 Fed.Reg. 5648 (Feb. 5, 1982). In these revised regulations, HHS acknowledged that OBRA did not change the definition of "currently available" as applied in the evaluation of resources. See id. at 5657. Nevertheless, HHS took the position that in passing OBRA, Congress intended to have States in their eligibility computations take into consideration all of a family's resources, liquid and nonliquid. Id.[3] Under this interpretation of Congressional intent in passing OBRA, the Secretary further took the position that OBRA prohibited States from having any ADC regulations that allowed grace periods during which ADC applicants or recipients could make good faith efforts to liquidate excess resources. HHS then began forcing those States that currently had grace period provisions to revise their regulations to conform with this new HHS policy. See, e.g., Schrader v. Idaho Dep't of Health and Welfare, 768 F.2d 1107 (9th Cir.1985); Galster v. Woods, 161 Cal.App.3d 85, 207 Cal.Rptr. 402 (1984), vacated, 173 Cal.App.3d 527, 219 Cal.Rptr. 500 (1985).
 
 
 6
 At the instance of HHS, on January 12, 1984, VDSS distributed Transmittal No. 90, which, effective February 1, 1984, deleted the Virginia ADC grace period provisions.[4] The regulations with which VDSS replaced its grace period provisions provided, in pertinent part, that any applicant for or recipient of ADC benefits with resources in excess of the Virginia limit, $600, would be ineligible for ADC benefits beginning March 1, 1984. See Virginia ADC Manual Sec. 303.2 (2/84). Pursuant to this new policy, VDSS officials began informing those individuals with excess resources of the pending termination of their ADC eligibility.
 
 
 7
 On April 29, 1984, Jacqueline Davis, Mary Spencer, Patricia DeFranzo, and Peggy Staton brought a class action suit against William Lukhard, Commissioner of VDSS, and against Margaret Heckler, Secretary of HHS. The plaintiffs claimed that the actions taken by the state and federal officials responsible for the administration of the ADC program that terminated the plaintiffs' eligibility for ADC benefits violated Sec. 402(a)(7) of the Social Security Act (42 U.S.C. Sec. 602(a)(7)), federal regulations governing the ADC program (45 C.F.R. Sec. 233.30(a)(3)(iii)(D) (1982)), and the equal protection clause of the fourteenth amendment to the U.S. Constitution. On the same day, the Davis plaintiffs sought, and were granted, a temporary restraining order (TRO). The order required the state defendants to reinstate the previous ADC provision allowing for grace periods, to restore full ADC benefits to all ADC recipients whose benefits VDSS had terminated as a result of the deletion of the grace period provision, and to review all applications for ADC benefits that VDSS had denied due to the grace period deletion. The TRO also prohibited the federal defendants from taking any action against VDSS for its failure to comply with federal HHS policy. The district court subsequently extended this TRO pending the outcome of the litigation.
 
 
 8
 On June 29, 1984, the district court granted summary judgment to the defendants on all issues, and the plaintiffs appealed. See Davis v. Lukhard, 591 F.Supp. 319 (E.D.Va.1984). Subsequently, the district court refused to extend its injunction in this action pending appeal. 106 F.R.D. 317. Nevertheless, due to Congressional amendments to the ADC statutes during the course of the Davis litigation, VDSS never implemented its proposed February revisions to its ADC Manual, and the plaintiffs in Davis remained eligible for ADC benefits until May 1985.
 
 
 9
 On July 28, 1984, the Deficit Reduction Act of 1984 (DEFRA), Pub.L. No. 98-369, 98 Stat. 494, was signed into law, which included certain clarifying amendments to the ADC statutes. In particular, Sec. 2626 of DEFRA, 98 Stat. 494, 1136, addressed the question of grace periods for ADC recipients or applicants with nonliquid real estate resources. Section 2626 provides in pertinent part that in determining ADC eligibility, States should exclude from their resource computations:
 
 
 10
 (iii) for such period or periods of time as the Secretary may prescribe, real property which the family is making a good-faith effort to dispose of, but any aid payable to the family for such period shall be conditioned upon such disposal, and any payments of such aid for that period shall (at the time of disposal) be considered overpayments to the extent that they would not have been made had the disposal occurred at the beginning of the period for which the payments of such aid were made.
 
 
 11
 DEFRA, Sec. 2626, Pub.L. No. 98-369, 98 Stat. 494, 1136 (1984) (amending 42 U.S.C. Sec. 602(a)(7)).
 
 
 12
 This amendment took effect on October 1, 1984. The Secretary of HHS promulgated regulations implementing the amendments contained in DEFRA, which regulations also took effect on October 1, 1984. See 49 Fed.Reg. 35586 (Sept. 10, 1984) (codified at 45 C.F.R. Sec. 233.20(a)(3)(B)(5)). As amended, these federal regulations require that States respect a family's good faith disposition efforts for a period of six months, with an option for the States to extend the grace period an additional three months should they so desire. See 45 C.F.R. Sec. 233.20(a)(3)(B)(5).
 
 
 13
 As stated earlier, Virginia never implemented its proposed February 1984 revisions to its ADC Manual. Thus, prior to the passage and implementation of DEFRA, Virginia's grace period provisions were still in effect and the plaintiffs in Davis were still receiving ADC payments in October 1984.[5] With the enactment of DEFRA, VDSS once again undertook a revision of its ADC grace period provisions. VDSS, therefore, promulgated new grace period regulations, which also took effect on October 1, 1984. The new grace period provisions allowed recipients of or applicants for ADC benefits who owned resources in excess of the $600 limit to receive benefits for six months while attempting to dispose of those excess resources. See Virginia ADC Manual Sec. 303.7 (10/84). The new grace period regulations, however, required a recipient or applicant who owned excess resources to sign an agreement with VDSS in which he agreed to sell the resources in question within a range of ten percent of fair market value. Id. Fair market value was determined from the tax assessment figures. Id. Sec. 303.3. In the event that the recipient/applicant did not dispose of his excess resources within the six month grace period, the new Virginia regulations required that his ADC eligibility terminate immediately. Id. Sec. 303.7. Under its interpretation of these new regulations, VDSS required that any ADC payments made during the six month grace period be treated as an overpayment, subject to immediate repayment upon expiration of the grace period, regardless whether the recipient/applicant had disposed of the excess resource in question.
 
 
 14
 The DEFRA provisions, the HHS regulations, and the VDSS regulations all took effect on October 1, 1984. Beginning in the month of October, VDSS began informing ADC recipients with excess resources that they would have to sign agreements with the agency in which they agreed to sell the resource in question and to repay the State for any ADC payments that they received during their grace periods.[6] In April, 1985, VDSS began informing those recipients who had been unable to dispose of their excess resources during the six month period beginning in November 1984, that their benefits would be terminated as of May 1, 1985, and that they would have to repay the State for all ADC benefits that they had received during the grace period.
 
 
 15
 On April 25, 1985, Peggy Staton, Ethel Shepard, and Alberta Shields filed a class action against William Lukhard and Margaret Heckler, alleging that the defendants, in implementing Sec. 2626 of DEFRA, had exceeded Congressional authority under the act to such an extent that they abrogated Congressional intent in enacting the provision. The plaintiffs sought declaratory and injunctive relief, as well as costs and attorneys' fees. Specifically, the plaintiffs sought a declaration that the regulations that HHS and VDSS had promulgated pursuant to Sec. 2626 of DEFRA were null and void because contrary to Congressional intent, and that the agreements that the plaintiffs had been forced to sign in November 1984 pursuant to these regulations were also without effect. The plaintiffs further sought to enjoin the defendants from taking any action in the future to penalize the plaintiffs for their inability to dispose of excess resources. The case was not certified as a class action.
 
 
 16
 On April 29, 1985, the district court granted a temporary restraining order (TRO) to the Staton plaintiffs, maintaining the status quo until May 7, 1985. On May 7, the district court vacated the TRO and entered final judgment for the defendants on all issues. On the same day, plaintiffs filed their appeal in this court. On motion of the parties, this court consolidated the Staton v. Lukhard appeal, No. 84-1447, with Davis v. Lukhard, No. 84-2059. This court denied plaintiffs' motion for a stay pending appeal.
 
 
 17
 In these consolidated appeals, plaintiffs raise several issues of some consequence concerning the proper interpretation of the ADC statutes. For reasons stated below, we treat only the issues in the Staton case. On appeal, the appellants in Staton complain that: (1) the district court erred in ruling that under the revised Virginia ADC regulations, VDSS could count resources in ADC eligibility determinations without regard to the resource's actual availability; (2) the district court erred in ruling that the revised Virginia ADC grace period provisions are consistent with Congressional intent in enacting Sec. 2626 of DEFRA; (3) the district court erred in ruling that the defendants could seek immediate repayment of alleged overpayments of ADC benefits upon expiration of the six month grace period merely upon a recipient's failure to dispose of his excess resources; (4) the district court erred in granting final judgment for the defendants; and (5) the district court erred in denying plaintiffs' motion for an injunction to preserve the status quo pending appeal. We first dispose of the Davis case, and then deal with each of these points in turn.
 
 II.
 
 18
 In Davis, the plaintiffs sought declaratory, injunctive and damage relief from the implementation of Virginia's proposed February 1984 revisions to the regulations governing the treatment of nonliquid, real property resources in the computation of ADC eligibility. As a result of intervening federal legislation on the matter, Virginia never implemented the challenged regulations. Consequently, we conclude that the Davis case does not present us with a current case or controversy and that we do not have jurisdiction to decide the issues presented. See Ashcroft v. Mattis, 431 U.S. 171, 172, 97 S.Ct. 1739, 1740, 52 L.Ed.2d 219 (1977) (per curiam). Because this case is moot, we vacate the judgment of the district court below and remand the case with instructions to the district court to dismiss the complaint. See United States v. Munsingwear, 340 U.S. 36, 40-41, 71 S.Ct. 104, 107, 95 L.Ed. 36 (1950).
 
 III.
 
 19
 Having disposed of the Davis appeal, we now turn to the issues presented for review in Staton.
 
 
 20
 In Staton, the appellants raise five points on appeal. We deal with each in turn. First, plaintiffs argue that the district court erred in ruling that under the Virginia ADC regulations, as revised in October 1984, VDSS could consider all resources owned by an ADC applicant or recipient in determining that person's eligibility for ADC benefits, regardless of the availability of those resources to the individual in question. They argue that the district court erred in so ruling because the ruling eliminated what is called the availability principle as it has been established in ADC law.
 
 
 21
 The availability principle is derived from judicial and administrative interpretations of the statutory purposes of the ADC program. See Heckler v. Turner, --- U.S. ----, ----, 105 S.Ct. 1138, 1147, 84 L.Ed.2d 138 (1985). Thus, the source of the availability principle is statutory, and, as such, is not immutable, but subject to such changes as Congress sees fit to make. This does not imply that Congress may not change any substantive or procedural law subject only to Constitutional limitations. Plaintiffs focus entirely on Sec. 402(a)(7)(A) of the Social Security Act as the sole statutory embodiment of the availability principle, but, in so doing, fail to recognize the effect of Sec. 2626 of DEFRA on that same principle.
 
 
 22
 In their argument, plaintiffs contend that the district court eliminated the availability principle through its construction of Sec. 2626 of DEFRA. The district court, however, merely construed a statutory modification of the principle, in which Congress explicitly defined when nonliquid resources become available for purposes of ADC eligibility determinations. Thus, the proper questions for review in this case concern whether the district court properly construed Virginia's revised ADC regulations as being consonant with Congress' statutory modifications to the availability principle, and not whether Virginia eliminated the availability principle altogether in its October 1984 revisions to its grace period regulations. It is these questions, therefore, that we address next.
 
 IV.
 
 23
 Plaintiffs contend that the district court erred in holding that the Virginia ADC grace period provisions are consistent with Congressional intent in enacting Sec. 2626 of DEFRA. Because Virginia's ADC grace period provisions are based in part on the federal HHS regulations interpreting Sec. 2626, we first determine whether the federal regulations are consistent with Congressional intent behind Sec. 2626.
 
 
 24
 Section 2626 of DEFRA provides in pertinent part that:
 
 
 25
 [The state plan shall not count as a resource in determining ADC eligibility] for such period or periods as the Secretary may prescribe, real property which the family is making a good-faith effort to dispose of, ...
 
 
 26
 DEFRA, Sec. 2626, Pub.L. No. 98-369, 98 Stat. 494, 1136 (1984) (codified at 42 U.S.C. Sec. 602(a)(7)(B)(iii)) (emphasis added).
 
 
 27
 The argument goes that in passing Sec. 2626 of DEFRA, Congress intended to have the Secretary prescribe rules governing grace periods that would be consistent with the rules governing the Supplemental Security Income (SSI) program. See 42 U.S.C. Secs. 1381, et seq. (1982). The statutory framework governing the SSI program includes a provision that is nearly identical to Sec. 2626 of DEFRA. See 42 U.S.C. Sec. 1382b(b) (1982).[7] In interpreting the "period or periods" language in Sec. 1382b(b), the Secretary of HHS promulgated regulations which provide, in pertinent part:
 
 
 28
 (a) In order for payment conditioned on the disposition of nonliquid resources to be made, the individual must agree in writing to dispose of real property within 6 months, and other property within 3 months.
 
 
 29
 (b) The 6 and 3 month time periods for disposition will be extended an additional 3 months where it is found that the individual had "good cause" for failing to dispose of the resources within the original time period.
 
 
 30
 (c) An individual will be found to have "good cause" for failing to dispose of a resource if, despite reasonable and diligent effort on his part, he was prevented by circumstances beyond his control from disposing of the resource.
 
 
 31
 20 C.F.R. Sec. 416.1242 (1985).
 
 
 32
 The Secretary has interpreted the grace period envisioned by this regulation to mean that, in the SSI program, if an individual cannot sell excess resources for reasons that are beyond his control, then the resource will not be counted in the eligibility computation and the individual will continue to receive benefits. See SSI Program Operations Manual System (POMS) Secs. 01130.205 & 01130.330.
 
 
 33
 Plaintiffs contend that the grace period rules governing the SSI program, as described above, are the rules that Congress intended the Secretary of HHS to adopt for the ADC grace period that Congress established in Sec. 2626 of DEFRA. In support of this argument, they emphasize the similarity of language between Sec. 2626 of DEFRA and 42 U.S.C. Sec. 1382b(b). They urge that the legislative history of Sec. 2626 indicates a Congressional intent for HHS to adopt regulations governing the ADC grace periods that are identical to those governing grace periods under the SSI program. Our analysis of the legislative history, however, convinces us otherwise.
 
 
 34
 In its report accompanying the DEFRA bill as eventually adopted, the House Conference Committee explicitly addressed the question of the regulations that it intended the Secretary of HHS to adopt in implementing Sec. 2626 of DEFRA. The Conference Committee stated:
 
 
 35
 The conference agreement follows the House bill with a modification establishing an AFDC policy on real property that is similar to SSI policy. The managers intend that by regulation, real property which the family is making a good faith effort to sell would be exempt for six months (with State option for an additional 3 months) but only if the family agrees to use the proceeds from the sale to repay the AFDC paid. Any remaining proceeds would be considered a resource.
 
 
 36
 HOUSE CONF.REP. NO. 861, 98th Cong., 2d Sess. 1395-96, reprinted in 1984 U.S.CODE CONG. & ADMIN.NEWS 697, 1445, 2083-84.
 
 
 37
 Inasmuch as the conference report represents the final statement of terms agreed upon by both houses of Congress, next to the statute itself, it is the most persuasive evidence of Congressional intent behind the enactment of a statute. See Demby v. Schweiker, 671 F.2d 507, 510 (D.C.Cir.1981). And this must be so with respect to Sec. 2626 of DEFRA.
 
 
 38
 The question presented in this appeal, therefore, is whether the regulations that the Secretary of HHS promulgated implementing Sec. 2626 are a reasonable interpretation of Congressional intent as expressed in the statute and the House Conference Report. See Heckler v. Turner, --- U.S. ----, ----, 105 S.Ct. 1138, 1153, 84 L.Ed.2d 138, (1985) (question to decide in determination of whether federal regulations exceed or abrogate Congressional authority is not whether course Congress has set is wise, but only whether Secretary has identified that course correctly). In answering this question, we recognize that the statute in question, Sec. 2626 of DEFRA, explicitly delegates authority to the Secretary to define the phrase "period or periods" in the statute. See 42 U.S.C. Sec. 602(a)(7)(B). In view of this explicit delegation of authority, the Secretary's definition of the term "period or periods" is "entitled to more than mere deference or weight." Schweiker v. Gray Panthers, 453 U.S. 34, 44, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460 (1981) (Secretary's definition of term when statute explicitly delegates authority to define term is entitled to "legislative effect" because Congress has entrusted to Secretary, rather than courts, primary responsibility for defining statutory term). Thus, in these circumstances, our task is a limited one of ensuring that the Secretary did not "excee[d] his statutory authority" and that the regulation is not arbitrary or capricious. Id.
 
 
 39
 The regulation that the Secretary adopted pursuant to this explicit delegation of authority provides that the State must exclude from its eligibility determinations:
 
 
 40
 Real property for a period of six months (or at the option of the State, nine months) which the family is making a good faith effort (as defined in the state plan) to sell subject to the following provisions. The family must sign an agreement to dispose of the property and to repay the amount of aid received during such period that would not have been paid at the beginning of such period, but not to exceed the amount of net proceeds of sale. If the property has not been sold within the period, or if eligibility stops for any other reason, the entire amount of aid paid during such period will be treated as an overpayment.
 
 
 41
 45 C.F.R. Sec. 233.20(a)(3)(B)(5).
 
 
 42
 Comparing the regulation in question to the authorizing statute and to the comments of the House Conference Committee as to Congressional intent behind the statute, we cannot conclude that the regulation either exceeds the statutory authority included in the statute or abrogates the Congressional intent behind it. Rather, we conclude that, although the Secretary's interpretation of the term "period or periods" to mean a grace period of limited duration may not be the only interpretation possible, the interpretation is reasonable and must be upheld. The regulation tracks the language of the Conference Committee Report. Moreover, the regulation is similar, though not identical, to the SSI regulations, as the Conference Committee intended. Consequently, we find it impossible to conclude that the Secretary's regulation is an unreasonable interpretation of Congressional intent behind Sec. 2626. If Congress in fact intended a contrary interpretation, we do not find it, and any such contrary intention as may be argued is certainly not so clearly expressed that we can override the deference that we must ordinarily accord to such explicitly authorized administrative regulations. The challenged Virginia ADC grace period regulations are patterned on the HHS regulations that we uphold. Consequently, we uphold the Virginia regulations as well.
 
 
 43
 Plaintiffs further argue that even if defendants may lawfully terminate their ADC payments at the end of the grace period, as we have just concluded they may, the Virginia defendants have not accorded them such a grace period because the Virginia fair market value requirement prevented them from disposing of their property at a price that the market would bear. Virginia ADC Manual Sec. 303.7 (10/84) requires that ADC recipients with excess property must sell it for at least ninety percent of its fair market value as determined by the tax assessment on the property in question. If an individual disposes of his excess property for less than ninety percent of fair market value, he faces possible disqualification from eligibility for a period of up to two years. Id. Plaintiffs contend that this additional Virginia regulation prevented them from having a grace period to dispose of their excess property in the manner that Congress contemplated because nowhere in Sec. 2626 did Congress authorize a state welfare agency to impose a sale price upon an excess resource. The contention apparently is that if Congress contemplated a grace period of limited duration, it must have done so on the assumption that every asset will sell at some price. Consequently, plaintiffs argue, Virginia's imposition of a sales price abrogates Congress' assumption that every asset will sell at some price by precluding them from determining, according to the actual real property market in the area, the price at which the property will sell.
 
 
 44
 The argument on this issue is not well taken, for it mistakenly assumes that the Virginia regulations arbitrarily impose a sales price on ADC applicants or recipients with excess resources, leaving them no recourse but to sell at ninety percent of the established price or face disqualification at the end of six months, regardless of the resource's actual marketability at that price. First, this court has previously held, in another context, that the Virginia procedure of valuing resources for purposes of welfare (medicaid) eligibility according to tax assessment figures is a reasonable procedure that does not violate either federal statutory or constitutional law. See Harris v. Lukhard, 733 F.2d 1075 (4th Cir.1984). Second, the Virginia ADC regulations explicitly authorize ADC applicants or recipients with excess resources that they believe are overvalued to appeal the valuation to ADC authorities. See Virginia ADC Manual Sec. 303.4 (10/84).[8] Thus, if an ADC recipient with excess resources determined that his property was not marketable at the price established by VDSS regulations, he could, within his six month grace period, seek to have the resource's value reevaluated in light of current market conditions. Id. Because the plaintiffs' argument in this regard is predicated on a mistaken assumption concerning the inflexibility of the Virginia ADC resource evaluation procedure, we conclude that the procedure does not deprive them of the six month grace period as Congress contemplated it.
 
 
 45
 In summary, we conclude that both the federal and state regulations implementing Sec. 2626 of DEFRA that established a grace period of limited duration, rather than an indefinitely extendable one, do not exceed statutory authority or contravene Congressional intent. Consequently, we hold that the district court did not err in concluding that VDSS could terminate the plaintiffs' ADC eligibility because of their failure to dispose of excess real property during the six month grace period accorded under both the federal and state ADC regulations.
 
 V.
 
 46
 It remains to be determined, however, whether the defendants can seek repayment of ADC payments made to plaintiffs during the six month grace period immediately upon expiration of the grace period, or upon disposal of the resource in question. This is the issue that we address next.
 
 
 47
 At the same time as VDSS informed the named plaintiffs in Staton that their ADC benefits were being terminated due to their failure to dispose of excess resources during the established grace period, VDSS also sought immediate repayment from them of all ADC benefits that they had received during the grace period. In their complaint, plaintiffs alleged that immediate repayment of ADC benefits received during the grace period was contrary to Congressional intent behind Sec. 2626. The district court held that if ADC recipients or applicants failed to dispose of their excess assets during the six month grace period, then lawful recovery efforts could commence immediately upon expiration of the grace period. On appeal from this part of the decision, plaintiffs contend that it is contrary to the plain words of Sec. 2626 of DEFRA. We agree and reverse the district court's holding on this issue.
 
 
 48
 Section 2626 of DEFRA provides in pertinent part:
 
 
 49
 [A]ny aid payable to the family for any such [grace] period shall be conditioned upon such disposal, and any payments of such aid for that period shall (at the time of disposal ) be considered overpayments to the extent that they would not have been made had the disposal occurred at the beginning of the period for which the payments of such aid were made; ...
 
 
 50
 DEFRA, Sec. 2626, Pub.L. No. 98-369, 98 Stat. 494, 1136 (1984) (codified at 42 U.S.C. Sec. 602(a)(7)(B) (emphasis added).
 
 
 51
 It is well settled that in all cases involving statutory construction, a court's preliminary point of inquiry must be the language that Congress employed. Touche Ross & Co. v. Redington, 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979). Moreover, a reviewing court must assume that a statute's language expresses the legislature's purpose in enacting the statute. Thus, absent a clearly expressed legislative intent to the contrary, a court must consider a statute's language conclusive. American Tobacco Co. v. Patterson, 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982).
 
 
 52
 Congress expressly stated in Sec. 2626 that ADC benefits paid during the grace period should be considered overpayments at the time of disposal of the excess resource. Defendants have not indicated, nor have we been able to find, any indication in the legislative history that would indicate a Congressional intent other than that the ADC payments should be recoverable upon the recipient's disposal of the resource in question, so long as the recipient is making good faith efforts to dispose of it. Consequently, we conclude that the district court erred in allowing VDSS to seek immediate recovery of ADC payments from these plaintiffs who had not yet disposed of their excess resources where there had been no finding of lack of good faith on plaintiffs' part. We hold the Virginia and federal regulations may not be construed so as to permit collection of any overpayments until the disposal of the property in question so long as a good faith effort to sell the same is being made. See Southeastern Community College v. Davis, 442 U.S. 397, 411, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979) (although agency's interpretation of statute under which it operates is entitled to some deference, such deference is constrained by statute's clear meaning).
 
 
 53
 Our decision on this point is supported by reason as well as by a literal reading of the statute. In Virginia, for example, the 90% of fair market value rule protects both the government from other than bona fide sales and the recipient from having to sell his property at a huge sacrifice.
 
 
 54
 In times of high interest such as existed during most, if not all, of this proceeding, we may reasonably assume that real property simply was not moving at 90% of appraised value. So, despite every good faith effort the plaintiffs may have made to sell their properties, they did not move, even taking into account any adjustments in fair market value which may have been made or could have been made under the regulations. Thus, the plaintiffs may well have done everything they could do to comply and the authorities by the same token may have done what they were supposed to do to insure compliance with applicable statutes and regulations. We find nothing in the legislative history which permits collection of overpayments under such circumstances so long as a good faith effort is being made to sell the properties involved.
 
 VI.
 
 55
 As a final point on appeal,[9] plaintiffs in Staton contend that the district court erred in denying plaintiffs' motion for an injunction to preserve the status quo pending appeal. We denied, on June 3, 1985, a similar motion of plaintiffs made in this court. We decline to reconsider our previous decision on this issue.
 
 
 56
 To sum up, we decide that ADC payments may be cut off at the end of the grace period so long as the property involved has not been disposed of, although a good faith effort to sell the same has been made. We further decide, however, that any excess payments made during the grace period are not collectable from the recipient by the authorities administering the program until the disposal of the property in question so long as a good faith effort is being made to sell the same.
 
 
 57
 No. 84-2059--VACATED AND REMANDED FOR DISMISSAL AS MOOT.
 
 
 58
 No. 85-1447--AFFIRMED IN PART, VACATED IN PART, AND REMANDED.[10]
 
 
 
 *
 The Honorable Emory M. Sneeden resigned from the court before this case was decided. He did not participate in the decision
 
 
 [1]
 Congress allowed States to adopt lower limits if they saw fit. See 42 U.S.C. Sec. 602(a)(7)(B). Pursuant to this discretion, Virginia had established a resource limitation for ADC eligibility at $600. See Virginia ADC Manual Sec. 303.2(E) (10/84)
 
 
 [2]
 Prior to the passage of OBRA, 21 States had established some sort of grace period provisions that allowed ADC recipients or applicants time to dispose of their excess resources, while maintaining their ADC eligibility. Virginia was one of these States. Virginia's grace period provisions prior to the passage of OBRA are discussed infra at note 4
 OBRA's effect on these state grace period provisions has been the source of litigation throughout the country. See, e.g., Schrader v. Idaho Dep't of Health and Welfare, 768 F.2d 1107 (9th Cir.1985); Galster v. Woods, 161 Cal.App.3d 85, 207 Cal.Rptr. 402 (1984), vacated 173 Cal.App.3d 529, 219 Cal.Rptr. 500 (1985). Both cases that have decided the issue prior to Davis v. Lukhard held that OBRA did not require those States with grace period provisions to eliminate them. Id.
 
 
 [3]
 In setting forth its position on the includability of nonliquid resources in ADC eligibility computations, HHS stated:
 Comment: Clarification was requested on how to proceed when an applicant or recipient has nonliquid resources such as a car or real property that could meet current need, but which must be disposed of to meet eligibility.
 Response: Assistance cannot be paid for any month in which the recipient has liquid or nonliquid resources which exceed the $1,000 limit prescribed by the statute.
 
 
 [47]
 Fed.Reg. at 5657
 
 
 [4]
 Under the Virginia ADC grace period provisions prior to Transmittal No. 90, if a family owned resources valued at over $600 which were not easily liquidated, the family was given a period of time within which the assets were not counted and during which the family could remain eligible for ADC benefits. See Virginia ADC Manual Sec. 303.5 (10/82). For real property, the grace period was six months. Id. For personal property, the grace period was sixty days. Id. If at the end of the applicable grace period, a family had not sold its excess resources, VDSS had to determine whether the family had been making good faith efforts to sell the asset. Id. If the family had engaged in good faith efforts to sell the asset, VDSS could consider the asset unavailable to the family and not include it in eligibility computations so long as the family continued to make a good faith effort to dispose of it. Id. If, on the other hand, VDSS determined that the family was not making good faith efforts to sell the asset, VDSS would terminate the family's ADC eligibility. Id
 
 
 [5]
 The Virginia ADC grace period provisions that were in effect prior to October 1984 are discussed in detail, supra note 4
 
 
 [6]
 The three named plaintiffs in Staton signed such agreements
 
 
 [7]
 Section 1382b(b) provides:
 (b) Disposition of Resources. The Secretary shall prescribe the period or periods of time within which, and the manner in which, various kinds of property must be disposed of in order not to be included in determining an individual's eligibility for benefits. Any portion of the individual's benefits paid for any such period shall be conditioned upon such disposal; and any benefits so paid shall (at the time of disposal) be considered overpayments to the extent they would not have been paid had the disposal occurred at the beginning of the period for which such benefits were paid.
 
 
 [8]
 Section 303.4 of the Virginia ADC Manual provides:
 If the applicant/recipient disagrees with the fair market value established by the agency, the worker must advise the individual in writing that the fair market value can be reestablished upon receipt of two written statements/estimates obtained by the applicant/recipient from appropriate qualified parties indicating the value of the resource in question. Appropriate qualified parties for purposes of reestablishing the value of personal property are persons deemed qualified by the agency to value the property in question. Appropriate qualified parties for real property are lending institutions, appraisers or licensed real estate firms.
 The worker will consider the average of the two estimates, or the current agency established value, or reassessed value if it can be obtained, whichever is less, as the new fair market value on which a determination of eligibility is to be made....
 
 
 [9]
 Plaintiffs also apparently contend that the district court erred in granting final judgment to the defendants. Because we have considered the propriety of the district court's rulings that formed the basis of its judgment for the defendants, we do not separately address this issue
 
 
 [10]
 On remand, the district court may take such action as it may deem appropriate. We cannot help but notice that some fact finder will have to ascertain whether or not a good faith effort has been, or is being, made to sell such properties. It may well be more appropriate for such finding to be made upon collection efforts by the authorities