# Cynthia St. Amour v. Department of Social Welfare
# Olive Belanger v. Department of Social Welfare
# Cynthia Weed v. Department of Social Welfare

[605 A.2d 1340]

Nos. 90-472, 90-475 and 91-533

Present: **Allen, C.J., Gibson and Johnson, JJ., and Peck, J. (Ret.), Specially Assigned**

Opinion Filed February 7, 1992

*William R. Dysart* and *Donna Sutton*, Paralegal (On the Brief), Vermont Legal Aid, Burlington, for Plaintiffs-Appellees St. Amour and Belanger.

*William J. O'Neill,* Vermont Legal Aid, St. Albans, for Plaintiff-Appellee Weed.

*Jeffrey L. Amestoy,* Attorney General, Montpelier, and *Christina Byrom,* Assistant Attorney General, Waterbury, for Defendant-Appellant.

**Gibson, J.** The Department of Social Welfare appeals from a decision of the Human Services Board ordering the Department to consider depreciation costs in calculating the net income of self-employed food stamp recipients. We reverse.

## I.

Petitioners appealed to the Board from the Department's termination or reduction of their food stamp benefits.[1] They argued that by failing to consider depreciation as a cost of producing self-employment income, the Department overestimated their net incomes and improperly reduced their food stamp benefits. The Department maintained that the applicable federal and state regulations[2] expressly state that depreciation is not an allowable cost to be subtracted from self-employment income. Relying on legislative history from the Food Stamp Act of 1977, and apparently unaware of legislative history from the Food Stamp Act Amendments of 1980, the Board concluded that Congress intended to include depreciation as a cost of producing self-employment income. Based on its conclusion, the Board construed the current food stamp regulations to forbid self-employed food stamp applicants to subtract the accelerated forms of depreciation permitted by the Internal Revenue Service, but to allow such applicants to subtract "specific decreases in the value of [their] property and equipment through wear, deterioration, or obsolescence." The Department appeals from that determination.

---

[1] Three cases that concern the same legal issue are consolidated on appeal.

[2] The food stamp program is a federally funded and regulated program administered locally by the states. 7 U.S.C. § 2020 (1988); see 33 V.S.A. § 1701 (authorizing program). The Commissioner of Social Welfare, who administers the food stamp program in accordance with federal standards, has adopted verbatim the relevant federal regulation. See 7 C.F.R. § 273.11(a)(4) (1991); 4 Code of Vermont Rules, Food Stamps § 273(a)(4), at 207 (1989).

## II.

In order to review the Board's ruling, we must retrace the history of the food stamp statutes. Upon the expiration of the Food Stamp Act of 1964, Congress passed the Food Stamp Act of 1977. Pursuant to that act, "income for purposes of the food stamp program shall include all income from whatever source excluding only . . . (9) the cost of producing self-employed income . . . ." 7 U.S.C. § 2014(d) (1988). Subsequent amendments to the act have left this language unchanged. The act is silent as to what constitutes "the cost of producing self-employed income"; however, the 1977 House Committee on Agriculture noted that the existing regulations excepted depreciation from the costs of producing self-employment income, and then stated as follows:

> While there is no reason to permit for food stamp purposes the accelerated forms of depreciation afforded under the Internal Revenue Code, and some factor for wear and tear of machinery and buildings, obsolescence and accrued replacement costs should be inherent in doing business. The full amount of self-employment income would be recognized as income, but then there would be an exclusion for the cost of producing that income.
>
> Thus, the Department would be expected to revise its regulations in this regard to allow some form of depreciation in arriving at "net" business income.

H. Rep. No. 464, 95th Cong., 1st Sess. 25, *reprinted in* 1977 U.S. Code Cong. & Admin. News 1978, 2001–02. These comments were not discussed in the House or Senate conference reports, but the Department of Agriculture did revise its regulations to allow some types of depreciation to be subtracted as costs of producing self-employment income.[3]

———
[3] The regulations provided as follows:
> Depreciation shall be allowed as a cost of producing self-employment income for equipment, machinery or other capital investments necessary to the self-employment enterprise. The Federal or State income tax form for the most recent tax year shall be used for calculating depreciation on an annual basis. No depreciation shall be allowed on a capital asset unless it is documented by the appropriate State or Federal income tax

The Food Stamp Act Amendments of 1980 did not change the language of § 2014(d)(9). But in the House Conference Report, the conferees "note that the Department's regulations defining self-employment income . . . provide for allowing as a cost of producing self-employment income depreciation 'for equipment, machinery, or other capital investments necessary to the self-employment enterprise' *and* intend that the Secretary no longer permit depreciation to be subtracted in determining net self-employment income." H. Conf. Rep. No. 957, 96th Cong., 2d Sess. 29, *reprinted in* 1980 U.S. Code Cong. & Admin. News 1057, 1069–70 (emphasis in original). As a result of the conferees' comments,[4] the new regulations promulgated in 1982 by the Department of Agriculture provided that "[i]n determining net self-employment income, the following items shall not be allowable as costs of doing business: . . . (D) Depreciation." 7 C.F.R. § 273.11(a)(4)(ii) (1991). As noted, Vermont has adopted this regulation verbatim.

Focusing on the 1977 House Committee Report, the Board concluded that Congress clearly intended to allow depreciation as a cost of producing self-employment income, and that the only way to reconcile the current regulations with that intent is by considering the term "depreciation" to mean "the *IRS method* of calculating depreciation." (Emphasis in original.) Thus, the Board concluded that although the Department "need not be bound by any amounts claimed by the petitioner[s] as

---

form. Households which did not file a tax return or did not claim depreciation may still receive consideration for depreciation by filing a regular or amended tax form for that year and presenting a copy of that amended return to the State agency.
43 Fed. Reg. 47,912 (1978).

[4] In proposing the rule change, the Department of Agriculture noted that the prior provision allowing depreciation as a cost was promulgated in compliance with the legislative history of the 1977 Act, and that the proposed change had been suggested by the Conference Report of the 1980 Amendments. 46 Fed. Reg. 4646 (1981). The Department went on to explain that allowing depreciation as a cost of producing self-employment income "results in an exemption of amounts not constituting 'actual costs' to the households; households are, in a sense, given a deduction in advance for the cost of capital goods which is otherwise not allowed." *Id.* In adopting the provision, the Department stated that the few comments it had received in response to the proposed rule change had come from state welfare agencies and were generally favorable. 47 Fed. Reg. 17,757 (1982).

'depreciation' on their IRS tax returns," it must allow decreases in the value of petitioners' property and equipment through wear, deterioration, or obsolescence, as a cost of producing self-employment income. In support of the Board's decision, petitioners argue that the 1980 House Conference Report is not persuasive as to the intent of the statute because it is a statement of the members of a subsequent Congress regarding a provision that was not amended by the 1980 Act.

## III.

At the outset of our review of the Board's decision, we point out that the Department of Agriculture explicitly stated that its proposed change disallowing depreciation as a cost of producing self-employment income was suggested by the 1980 Conference Report, which unequivocally stated an intention to no longer permit the subtraction of any type of depreciation from self-employment income. See 46 Fed. Reg. 4646 (1981). Therefore, the Board's construction of the Department regulation was a determination that, as written, the regulation is inconsistent with the federal food stamp statute.

The food stamp statute is silent as to what constitutes the costs of producing self-employment income, but it authorizes the Secretary of Agriculture to issue regulations consistent with the act that are appropriate for the effective administration of the food stamp program. 7 U.S.C. § 2013(c). If a statute is silent with respect to a "specific issue, the courts must determine if a challenged agency regulation "'is based on a permissible construction of the statute.'" *Lepage v. Yeutter*, 917 F.2d 741, 743 (2d Cir. 1990) (quoting *Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984)). Because the instant statute is silent on the point at issue, we must consider whether the challenged regulation is a reasonable interpretation of congressional intent as expressed in the legislative history. *Davis v. Lukhard*, 788 F.2d 973, 981 (4th Cir. 1986).

We turn first to the 1977 House Committee Report. "Although not decisive, the intent of the legislature as revealed by the committee report is highly persuasive." 2A N. Singer, Sutherland on Statutory Construction § 48.06, at 332–33 (5th ed. 1992). The statement in the 1977 committee report appears to constrain the Secretary to consider depreciation as a cost to

be subtracted from self-employment income, and the Secretary adopted a regulation that put the committee's expectation into effect. But cf. *Scalise v. Thornburgh*, 891 F.2d 640, 645 (7th Cir. 1989) ("[a]n expression of an 'expectation' by one committee of the House . . . does not establish congressional intent," particularly in the absence of any confirmation of this expectation in the Senate or House Conference Reports).

Regarding the 1980 House Conference Report, which expressed an intent that the Secretary no longer permit depreciation to be deducted in determining net self-employment income, petitioners argue that the report is merely post-enactment legislative history entitled to little or no weight in determining congressional intent as to the meaning of statutory language that was not amended in 1980. Petitioners cite *Pierce v. Underwood*, 487 U.S. 552, 566–67 (1988), and other cases, in support of their position.

In *Pierce*, the Court was called upon to interpret an act which authorized an award of attorney's fees against the Government "unless the court finds that the position of the United States was substantially justified." In attempting to determine what Congress meant by the term "substantially justified," the Court gave no weight to an excerpt from a House Committee Report pertaining to the 1985 reenactment of the 1980 statute where the phrase initially appeared. The House Report stated that the term "substantially justified" must denote a higher standard than reasonableness because the 1980 Congress rejected a standard of "reasonably justified." The Court held that the statement in the House Report was not controlling for two reasons: (1) the statement could not be an authoritative interpretation of what the 1980 statute meant because "it is the function of the courts and not the Legislature, much less a Committee of one House of the Legislature, to say what an enacted statute means"; and (2) the statement could not be an authoritative expression of what the 1985 Congress intended because it did not explain language drafted by the 1985 Committee, because it accepted "the 1980 meaning of the terms as subsisting," and because there was no indication that the 1985 Congress intended to do anything but reenact the 1980 legislation with regard to the standard of review at issue. *Id.*

We believe that the instant situation is distinguishable from the one in *Pierce*. In *Pierce*, the House Committee Report of-

fered its view of the meaning of the phrase that constituted the standard of review to be employed by the courts in determining whether to award attorney's fees. It is for the courts, not an administrative agency, to apply and construe that standard of review. Here, on the contrary, the administering agency is directed to promulgate regulations appropriate for the effective administration of the food stamp program. 7 U.S.C. § 2013(c). This duty necessarily includes the promulgation of regulations detailing what types of deductions would be allowed as costs of producing self-employment income. The 1980 Congress had no incentive to change the actual wording of the statute because the details that were to be changed were those outlined in the agency regulations, not the statutory language. Further, in amending the regulation, the agency was implementing the intent of a joint conference of *both* houses of Congress. See *Davis*, 788 F.2d at 981 (a conference report is the most persuasive evidence of Congressional intent behind the enactment of a statute because it "represents the final statement of terms agreed upon by both houses of Congress").

The instant situation is more analogous to *Lepage v. Yeutter* than *Pierce v. Underwood*. In *Lepage*, food stamp recipients challenged an agency regulation redefining the term "head of the household" to mean the "primary wage earner" rather than the person who had applied for the stamps. The Food Stamp Act disqualifies a household from receiving food stamp benefits for ninety days when the "head of the household" voluntarily quits his or her employment. Congress had not defined the term "head of the household" in the original enactment or any subsequent amendment. In a decision that was reversed on appeal, the federal district court held the new regulation to be invalid. *Dubuque v. Yeutter*, 728 F. Supp. 303, 315 (D. Vt. 1989).

The Secretary originally defined "head of the household" to mean the person who had applied for the food stamps. See *Lepage*, 917 F.2d at 744. The House Agriculture Committee reiterated that definition in the 1977 House Report when it discussed a new provision of the food stamp program penalizing heads of households who voluntarily leave their jobs. In 1979, the Secretary promulgated a regulation concerning the voluntary-quit provision that substituted the term "primary wage earner" for "head of the household." Congress amended the

voluntary-quit provision in 1981 to include households already receiving benefits. Although the term "head of the household" remained undefined and unchanged in the statute, the House Conference Report on the 1981 amendments stated that applicant households would be temporarily disqualified if the "primary wage earner" has voluntarily quit a job without good cause. See *id.* at 744.

The court of appeals overruled the district court and concluded that Congress's statements of purpose in amending the voluntary-quit provision in 1981 were entitled to great weight. *Id.* at 745. Pointing to the uncertainty of the statement in the 1977 House Report, the authority of the Secretary to promulgate appropriate regulations, and the extensive rulemaking record, the court found that the challenged regulation was consistent with the goals of the food stamp program. *Id.* at 745–46.

▉▉▉▉ We come to a similar conclusion here. Given the Secretary's mandate to promulgate appropriate regulations, the instant regulation must be upheld unless it is inconsistent with the purpose of the statute.[5] The statutory language is silent as to what constitutes the costs of self-employment income. After submitting its proposed rule change for public comment, the Department concluded that allowing depreciation as a cost of producing self-employment income would result "in an exemption of amounts not constituting 'actual costs' to the households." 46 Fed. Reg. 4646 (1981). Petitioners do not challenge that statement, but instead point to recent amendments of the Food Stamp Act aimed at increasing the participation of farmers in the food stamp program and assuring that farmers will be able to average their income and expenses over the year. We cannot conclude that these amendments indicate an intent by Congress to allow depreciation as a cost of producing self-employment income. Rather, we conclude that the amended regulation is neither inconsistent with the statutory language nor in contravention of the intent of Congress.

*Reversed and remanded.*

---

[5] We point out that deference to an administering agency's regulations is appropriate even when the agency has changed its position, as long as "there appears to have been good reason for the change." *Defenders of Wildlife, Friends of Animals v. Lujan,* 911 F.2d 117, 124 (8th Cir. 1990).