**Leimomi GOLIS, individually and on behalf of all others similarly situated, Plaintiff–Appellant,**

v.

**Winona RUBIN, Director of the Department of Human Services, State of Hawaii, Defendant–Appellee and Third–Party Plaintiff,**

v.

**Michael ESPY, Secretary of the Department of Agriculture, and Donna Shalala, Secretary of the Department of Health and Human Services, Third–Party Defendants.**

**CV. No. 92–00603DAE.**

United States District Court, D. Hawaii.

July 20, 1994.

Stacy C. Suzuki, Charles H. Hite, Legal Aid Society of Hawaii, Honolulu, HI, for Leimomi Golis.

Robert A. Marks, Susan Schafer, G. Cher Foerster, Office of the Atty. Gen., State of Hawaii, Honolulu, HI, for Winona E. Rubin.

Daniel Bent, Michael Chun, Asst., Omer G. Poirier, U.S. Attys. Office, Honolulu, HI, for Edward R. Madigan, Louis W. Sullivan.

*ORDER GRANTING IN PART AND DE-NYING IN PART EACH PARTY'S MOTION FOR SUMMARY JUDG-MENT*

DAVID ALAN EZRA, District Judge.

The court heard the parties' cross motions on July 18, 1994. Charles H. Hite, Esq., appeared on behalf of plaintiff-appellant; Assistant United States Attorney Michael Chun appeared on behalf of third-party defendants Michael Espy and Donna Shalala; Deputy Attorney General G. Cher Foerster appeared on behalf of defendant-appellee/third-party plaintiff Winona Rubin. After reviewing the motion and the supporting and opposing memoranda, and hearing oral argument from counsel, the court GRANTS IN PART and DENIES IN PART each party's motion for summary judgment.

*BACKGROUND*

This case involves a § 1983 individual and class action suit on behalf of applicants and recipients of benefits under the Hawaii program for Aid to Families with Dependent Children ("AFDC") and for Medically Needy Medicaid ("Medicaid"). Plaintiff Leimomi Golis ("Golis" or "plaintiff"), suing on behalf of herself individually and all others similarly situated, challenge the policies of both the Department of Human Resources ("DHS"), State of Hawaii, and the Secretary of Health and Human Services ("HHS" or "Secretary") concerning valuation of applicants' and recipients' fractional interests in non-residential real property for welfare benefit purposes. Specifically, plaintiff asks this court to declare the following:

(1) the state's method of valuing fractional interests held by applicants or recipients violates the federal requirement that resources be "reasonably evaluated";

(2) the state's requirement that applicants or recipients with fractional interests in non-resident real property make a "good faith effort to sell" their interests is arbitrary and capricious; and

(3) the AFDC rules requiring the sale of real property are arbitrary and capricious because they do not match the SSI rules governing the sale of real property.

Golis challenges the state's decision to deny her welfare, AFDC, and food stamps based on her ownership of one-fourth of a piece of real property located in Maui ("the property"). She co-owns this property with three of her siblings; only her brother lives on the property.

Golis and her minor son began receiving AFDC and Medicaid benefits in 1991. When she first applied for assistance, she lived on Maui (although not on the property at issue here). On August 5, 1991, plaintiff signed a DHS document entitled "Agreement for Conditional Exemption of Real Property Not Used as a Family Home." This form states that: "Claimant agrees that the real property not used as family home shall be exempt for a period of time specified in department rules if a family is making a good faith effort to sell the property." Somewhere between August 5 and August 15, 1991, the DHS worker on Maui called plaintiff to request that she submit within thirty days a plan on the sale of her interest in the property. At her administrative hearing, plaintiff testified that she did not have time to prepare this plan within thirty days because she was moving to Oahu that month. On or about October 10, 1991, Golis told the worker that she had no plans to sell her share of the property because her brother was residing there. Plaintiff testified at her administrative hearing that she had asked her siblings if they wanted to buy her interest, but they declined. Plaintiff told the worker that she would call back by October 16 regarding plans for the property; she did not, however, submit any plan to sell her interest. On October 18, 1991, Golis received a letter terminating her benefits.

In deciding to terminate Golis, DHS evaluated her equity value in the property as $17,934.69, pursuant to federal AFDC regulations requiring "reasonable evaluation." 45 C.F.R. § 233.20(a)(3)(ii)(E). The regulations require the state to assess the "fair market value" of the interest, i.e., "the price a [particular] item will sell for on the open market in the geographic area involved." 45 C.F.R. § 233.20(a)(3)(ii)(F)(4). DHS used the following information to calculate the fair market value of plaintiff's interest in the property:

(1) County of Maui tax assessment of building and land = $71,600

(2) no encumbrances on the property

(3) $71,600 divided by 4 = $17,900.

Because recipients are allowed to possess no more than $1,000 in available resources, and because, according to this formula, plaintiff's interest in the property exceeded $1,000, DHS terminated her benefits.

Plaintiff requested an administrative hearing to challenge this termination. At the hearing, she admitted that she had never tried to sell the property through a realtor,[1] nor had she instituted a partition action. She also testified that she had asked her sister if she wanted to buy the property, and her sister said no. Golis argued that her fractional share in the property was "unmarketable," and presented statements from two local real estate brokers attesting to that conclusion. One realtor stated:

In order to list and sell the above referenced property, we would need the consent of all owners of record. There are four owners in this case with only one wishing to sell. Therefore, the property is not considered marketable as it would require a sale through a partition suit which is very expensive and would discourage any buyer, if any were even found, desiring a one-fourth interest in a residential property.

These realtors concluded that the fair market value of Golis' property was zero; hence, the value of her interest did not exceed the $1,000 AFDC resource limitation.

The administrative judge rejected Golis' arguments. He found that her property was marketable and available to be sold, and that DHS had reasonably evaluated the worth of her fractional interest. He then found that, by admitting on October 14, 1991 that she had no plans to sell her interest because her brother lived in the house, she had not made a good faith effort to sell her interest; accordingly, the exemption which had been triggered by the Agreement for Conditional Exemption for Real Property Not Used as a Family Home was terminated as of October 14, 1991. He then concluded that DHS had properly terminated Golis' benefits because her equity value of $17,900 for her one-fourth interest in the property is a countable resource which exceeded the maximum allowable reserve.

1. In fact, she never contacted a realtor.

Plaintiff filed a timely appeal with the First Circuit Court, State of Hawaii on February 21, 1992. DHS filed a third-party complaint against the Secretary of Agriculture and the Secretary of Health and Human Services. The federal defendants removed the case to federal court on September 18, 1992. On March 3, 1993, Golis filed a motion for certification as a class action. Before the hearing, the Secretary of Agriculture settled the claims against him with the plaintiff. On August 24, 1993, this court certified the plaintiff class.

On February 17, 1994, plaintiff filed her motion for summary judgment. Defendant Winona Rubin of DHS filed her cross motion for summary judgment on February 22, 1994. Third–Party Defendant Donna Shalala, Secretary of Health and Human Services, has joined in the motion filed by Winona Rubin and has opposed the motion filed by plaintiff. Winona Rubin has joined in HHS's Opposition to plaintiff's motion.

## STANDARD OF REVIEW

### I. Summary Judgment

Rule 56(c) provides that summary judgment shall be entered when:

[T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). The moving party has the initial burden of demonstrating for the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (*citing Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). However, the moving party need not produce evidence negating the existence of an element for which the opposing party will bear the burden of proof at trial. *Id.* 477 U.S. at 322, 106 S.Ct. at 2552.

Once the movant has met its burden, the opposing party has the affirmative burden of coming forward with specific facts evidencing a need for trial. Fed.R.Civ.P. 56(e). The opposing party cannot stand on its pleadings, nor simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987); Fed.R.Civ.P. 56(e). There is no genuine issue of fact "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citation omitted).

At the summary judgment stage, this court may not make credibility determinations or weigh conflicting evidence. *Musick v. Burke,* 913 F.2d 1390, 1394 (9th Cir.1990). The standard for determining a motion for summary judgment is the same standard used to determine a motion for directed verdict: does the evidence present a sufficient disagreement to require submission to a jury or is it so one-sided that one party must prevail as a matter of law. *Id.* (citation omitted).

### II. Review of Agency Decisions

The court must give the agency's construction of a statutory scheme "considerable weight." *Chevron, U.S.A. Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984).

The power of an administrative agency to administer a congressionally created ... program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress. If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute. [Where] the legislative delegation to an agency on a particular question is implicit rather than explicit[,] ... a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.

We have long recognized that considerable weight should be accorded to an execu-

tive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations has been consistently followed by this Court whenever a decision as to the meaning or reach of a statute has involved reconciling conflicting policies, and a full understanding of the force of the statutory policy in the given situation has depended upon more than ordinary knowledge respecting the matters subjected to agency regulations.

If this choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, we should not disturb it unless it appears from the statute or legislative history that the accommodation is not one that Congress would have sanctioned.

*Id.* at 843–45, 104 S.Ct. at 2782–83 (internal quotations and citations omitted).

■ In cases involving review of agency actions and regulations, the agency must "articulate a satisfactory explanation for its action, including a 'rational connection between the facts found and the choice made.'" *Motor Vehicles Mfrs Ass'n v. State Farm Mut. Auto Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983). (citation omitted). The reviewing court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id.; U.S. v. Louisiana–Pacific Corp.,* 967 F.2d 1372, 1376 (9th Cir.1992); *Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 378, 109 S.Ct. 1851, 1861, 104 L.Ed.2d 377 (1989).

Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it

could not be ascribed to a difference in view of the product of agency expertise. The reviewing court should not attempt itself to make up for such deficiencies; we may not supply a reasoned basis for the agency's action that agency itself has not given.

*Motor Vehicles,* 463 U.S. at 43, 103 S.Ct. at 2867. Where the plaintiff is challenging the agency's interpretation of its own regulation, the agency's interpretation is given considerable weight unless it is plainly erroneous or inconsistent with the regulation. *See Gardebring v. Jenkins,* 485 U.S. 415, 430, 108 S.Ct. 1306, 1314, 99 L.Ed.2d 515 (1988).

### DISCUSSION

#### I. Legal and Regulatory Framework

The AFDC program, authorized under Title IV–A of the Social Security Act, 42 U.S.C. §§ 601 et seq., is designed by Congress to provide money to needy dependent children and their families. 42 U.S.C. § 601; 45 C.F.R. § 233.10(b)(2)(ii)(a); *Shea v. Vialpando,* 416 U.S. 251, 253, 94 S.Ct. 1746, 1750, 40 L.Ed.2d 120 (1974); *Montalvo v. Ching,* 64 Haw. 345, 641 P.2d 1321 (1982).[2] To qualify for AFDC assistance, a family must meet certain standards of financial need which are determined by the family's resources and income. 42 U.S.C. § 602(a).

The AFDC program is a cooperative endeavor between the federal government and the participating states. *King v. Smith,* 392 U.S. 309, 316, 88 S.Ct. 2128, 2133, 20 L.Ed.2d 1118 (1968). The participating state and the federal government share the cost of the program equally; however, the program itself is administered by the state. In order to participate in the AFDC program, the state must submit a plan which fulfills all requirements of Title IV–A and the federal regulations promulgated thereunder. 42 U.S.C. § 602(a). Although states are not required to participate in this welfare program, once a

---

**2.** Plaintiffs also sue for Medicaid benefits. Medicaid provides medical assistance to poor and indigent persons. 42 U.S.C. §§ 1396 et seq. All participating states must comply with federal statutes and regulations. 42 C.F.R. §§ 430.0, 430.1, 430.10. Hawaii has chosen to participate in Medicaid, and the Secretary of Health and

Human Services administers the Medicaid program. Because the requirements of Medicaid and AFDC are identical for the purposes of this lawsuit, the court will simplify its discussion by referring to both programs using "AFDC," distinguishing only when the standards or requirements for the two programs diverge.

state chooses to do so, it must comply with the mandate of federal law. 45 C.F.R. §§ 201.2 and 233.10(b)(1); *King*, 392 U.S. at 316–17, 88 S.Ct. at 2133. Hawaii has chosen to participate in both AFDC and Medicaid.

■ While the income limits vary, the resource limits are set by federal law: the standard of need is the amount deemed necessary to maintain a hypothetical family at a subsistence level. *Shea*, 416 U.S. at 253, 94 S.Ct. at 1750. A family's income is compared to the standard of need and all resources are measured against a standardized limit. In 1981, Congress lowered the statutory resource limitation for AFDC from $2,000 to $1,000 as part of the Omnibus Budget Reconciliation Act ("OBRA"), amending 42 U.S.C. § 602(a)(7). *See* 45 C.F.R. § 233.-20(a)(3)(i)(A) and (B); HAR § 17–675–5; *Davis v. Lukhard*, 788 F.2d 973 (4th Cir. 1986). The Medicaid asset limit for medical assistance starts at $2,000 for a family of one or two persons, and increases $250 with each additional family member. HAR § 17–675–6.

■ To correctly determine an individual's financial need for the purposes of welfare eligibility, the state must properly evaluate an individual's resources and income: it may only consider "available" resources, and it must reasonably evaluate each resource held.

### A. Availability

Only those assets which are "available" may be counted towards the $1,000 maximum. 45 C.F.R. § 233.20(a)(3)(ii)(D). This availability requirement ensures that states will include in their calculations only those resources which "actually exist," as distinct from those which are "fictitious", "imputed", or "unrealizable." *Heckler v. Turner*, 470 U.S. 184, 200, 201, 105 S.Ct. 1138, 1147, 1147, 84 L.Ed.2d 138 (1985).

> To the extent not inconsistent with any other provision of this chapter, income and resources are considered available both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance.

45 C.F.R. § 233.20(a)(3)(ii)(D). Hawaii's rule for AFDC applicants and recipients tracks the federal rules. Hawaii Administrative Rules ("HAR") § 17–675–14(h); HAR § 17–675–2 ("asset" defined as including real property which individual or family owns and has the right, authority or power to convert into cash). With respect to jointly held real property, HHS has directed each state to establish criteria for determining whether such interests are actually available. SSA–AT–82–27.

AFDC excludes from "availability" any real property on which the applicant or recipient resides. 42 U.S.C. § 602(a)(7)(B)(i); HAR § 17–620–7(a)(3) (equity in home of resident is exempt); 42 C.F.R. §§ 435.700 and 435.845 and HAR § 17–675–48 (Medicaid also excludes home in which recipient resides as a countable asset). If the applicant does not reside on the property, the property is not specifically excluded; the property will only be excluded if it is shown not to be "available." 45 C.F.R. § 233.20(a)(3)(i)(D); 42 U.S.C. § 1396a(a)(17)(B); 42 C.F.R. § 435.845.

### 1. Good Faith Attempts to Sell

In 1984, Congress required AFDC recipients to make a good faith effort to sell non-resident real property within six months as a condition of eligibility, i.e., to make such property available. 42 U.S.C. § 602(a)(7)(B). This requirement was enacted as part of the Deficit Reduction Act of 1984 ("DEFRA"). Section 2626 of DEFRA modified the then-existing AFDC statute, which had no provision for a grace period during which an applicant could receive aid conditioned on good faith efforts to sell excess property. Section 2626, as enacted, provides that the states shall not count as a resource in determining AFDC eligibility:

> for such period or periods as the Secretary may prescribe, real property which the family is making a good faith effort to dispose of, but any aid payable to the family for such period shall be conditioned upon such disposal and any payments of such aid for that period shall (at the time of the disposal) be considered overpayments to the extent that they would not have been made had the disposal occurred at the beginning of the period for which the payments of such aid were made.

Section 2626, Pub.L. No. 98–369, 98th Cong., 2nd Sess. (1984), 1984 U.S.C.C.A.N. 697, codified at 42 U.S.C. § 602(a)(7)(B)(iii).[3]

Hawaii's exemption and six-month grace period for good faith attempts to sell practically mirrors the language of the federal regulation. HAR § 17–620–7(a)(15). Its good faith exemption provision reads as follows:

> Real property not used as a family home for a period of six months which the family is making a good faith effort to sell [is exempt] subject to the following provisions:
>
> (A) The family shall sign a written agreement to sell the real property and to repay the amount of financial assistance received during the six months that would not have been paid had the real property been sold at the beginning of the period. The amount repaid shall not exceed the amount of net proceeds of the sale; and
>
> (B) If the real property has not been sold within the six-month period, or if eligibility stops for any other reason, the entire amount of financial assistance paid during the period shall be treated as an overpayment and recovered by the department.

HAR § 17–620–7(a)(15)(A) and (B).

2. Similarity to SSI Program

The exemption scheme and six-to-nine month grace period for AFDC and Medicaid

closely resemble the relevant provisions of the Supplemental Security Income program ("SSI").[4] SSI was created in 1974 to assure, for persons aged 65 and over, or who are blind or disabled, a level of income "viewed by Congress as the minimum necessary for the subsistence level of that individual[.]" *Whaley v. Schweiker*, 663 F.2d 871 (9th Cir. 1981); 42 U.S.C. §§ 1381 et seq. The SSI exemption provision, codified at 42 U.S.C. § 1382b(b) reads:

> *Disposition of Resources.* The Secretary shall prescribe the period or periods of time within which, and the manner in which, various kinds of property must be disposed of in order not to be included in determining an individual's eligibility for benefits. Any portion of the individual's benefits paid for any such period shall be conditioned upon such disposal; and any benefits so paid shall (at the time of the disposal) be considered overpayments to the extent they would not have been paid had the disposal occurred at the beginning of the period for which such benefits were paid.

42 U.S.C. § 1382b(b).

The grace period in the 1984 SSI program, as promulgated in 20 C.F.R. § 416.1242, allowed six-to-nine months to dispose of resources. The SSI program was altered in 1987 to allow for an open-ended grace period. If an individual cannot sell excess resources

---

**3.** *See also* 45 C.F.R. § 233.20(a)(3)(B)(5), the regulation implementing the statute, which excludes:

> Real property for a period of six months (or at the option of the State, nine months) which the family is making a good faith effort (as defined in the state plan) to sell subject to the following provisions. The family must sign an agreement to dispose of the property and to repay the amount of aid received during such period that would not have been paid at the beginning of such period, but not to exceed the amount of net proceeds of sale. If the property has not been sold within the period, or if eligibility stops for any other reason, the entire amount of aid paid during such period will be treated as overpayment.

**4.** The similarity between the AFDC and SSI exemptions is no accident—the conference committee intended the AFDC policy on real property to be similar to the SSI policy:

> The conference agreement follows the House bill with a modification establishing an AFDC policy on real property that is similar to SSI policy. The managers intend that by regulation, real property which the family is making a good faith effort to sell would be exempt for six months (with State option for an additional 3 months)....

HOUSE CONF. REP. NO. 861, 98th Cong, 2d Sess. 1395–96, reprinted in 1984 U.S.C.C.A.N. 697, 1445, 2083–84 ("H.C.R.P. No. 861").

The Fourth Circuit court has already acknowledged that the AFDC "regulation tracks the language of the Conference Committee Report. Moreover, the regulation is similar, though not identical to the SSI regulations, as the Conference Committee intended." *Davis*, 788 F.2d at 982.

for reasons that are beyond his or her control, the resource will not be counted in the eligibility computation and the individual will continue to receive benefits.

[T]he Secretary shall not require the disposition of any real property for so long as it cannot be sold because (A) it is jointly owned (and its sale would cause undue hardship, due to loss of housing, for the other owner or owners), (B) its sale is barred by a legal impediment, or (C) as determined under regulations issued by the Secretary, the owner's reasonable efforts to sell have been unsuccessful.

Section 9103 of 1987 OBRA, Pub.L. No. 100–203, 100th Cong., 1st Sess., reprinted in 1987 U.S.C.C.A.N. (101 Stat.) 1330, 1330–301.

The 1987 OBRA amendment made no explicit reference to AFDC or Medicaid exemption programs.

### B.   Reasonable Evaluation

■ The state must also reasonably evaluate an individual's available assets and income, in order to determine whether the $1,000 threshold has been met or surpassed. 45 C.F.R. § 233.20(a)(3)(ii)(E); 42 U.S.C. § 1396a(a)(17)(C). The "reasonable evaluation" requirement assures that the State will not assign artificially high values to either resources or income in order to eliminate truly needy persons from the welfare program. Real property must be reasonably evaluated according to the local real estate market. *Schrader v. Idaho Dep't of Health and Welfare,* 768 F.2d 1107, 1113 (9th Cir. 1985).

Finally, resources must be assessed according to their "equity value." "Equity" is defined as fair market value minus encumbrances. 45 Fed.Reg. 45911, 45912 (7/8/80). "Fair market value" is defined as "the price a [particular] item will sell for on the open market in the geographic area involved." 45 C.F.R. § 233.20(a)(3)(ii)(F)(4). DHS determines the fair market value of real property pursuant to its administrative rules:

*Determining Fair Market Value of Real Property.*

The fair market value of real property may be determined by:

(1) Dividing the most recent tax assessed value of the property by the per cent of fair market value used by the tax assessor to determine the tax assessed value of the property; or

(2) Utilizing generally accepted methods of appraisals or considering opinions of qualified experts.

HAR § 17–620–11.

*Determining Equity Value of Real Property.*

The equity value of real property shall be determined by subtracting all encumbrances from the fair market value.

HAR § 17–620–12.

*Treatment of Special Forms of Ownership of Real or Personal Property.*

(a) The individual's interest in property held in joint tenancy shall be determined by dividing the current value of the property by the number of joint tenants.

.      .      .      .      .

(e) The treatment provided in this section is complemented by the procedures set forth in this chapter for providing financial assistance through use of real property liens.

HAR § 17–620–13.

### II.   The Eligibility of Plaintiff Golis

■ Because the plaintiff in this case brings suit in her individual capacity, the court must first address the appropriateness of the administrative judge's termination of her individual benefits based on the above regulations.

Plaintiff argues that she presented evidence to the administrative judge that her fractional interest was unmarketable, i.e., that the fair market value of her one-fourth interest in the property was zero. The administrative judge, however, found DHS's computation according to the tax-assessed value to be appropriate. This court must now determine whether DHS's valuation, and the administrative judge's adoption thereof, was arbitrary and capricious.

HHS, the third-party defendant in this case, in its Opposition to Plaintiff's Motion for Summary Judgment, concludes that DHS

did not reasonably evaluate the fair market value of plaintiff's fractional interest, as required by 45 C.F.R. §§ 233.20(a)(3)(ii)(E) and 233.20(a)(3)(ii)(F)(4). HHS notes first that Hawaii has previously been warned about the dangers of using tax-assessed values to reflect fair market values of property. *See* Spear–Rubin letter dated 11/8/91, attached as Exhibit C to DHS's Motion for Summary Judgment. HHS correctly points out that the proper determination of the fair market value of any fractional interest is not simply the fractional percentage of the tax-assessed value; instead, the government must consider a variety of factors: utility, amenity, configuration, and location of the property. *See* Declaration of John Joseph Mulligan at ¶ 10, attached as Exhibit A to HHS's Opposition to Plaintiff's Motion. The values of four ¼ interests, valued separately, simply do not add up the market value of the piece of property as a whole, "due to the possibility of reduced utility or enjoyment of less than the whole." *Id.* at ¶ 11. Mr. Mulligan states, "For example: single family residential property generally lends itself to fractional interests for income (residential or speculative) purposes, but in some cases for cohabitation by multiple parties each desir[es] protection of their interest or segregation of the equity." *Id.* at ¶ 10. Because DHS considered only the tax-assessed value of the subject property, simply assigned plaintiff one-fourth of that value, and failed to consider all of these other factors, it thus failed to reasonably evaluate the fair market value of plaintiff's share.

At the administrative hearing, plaintiff produced evidence, in the form of affidavits from local real estate brokers, that her fractional interest had a fair market value of zero. The local real estate brokers considered the factors described above and concluded that Golis' interest in the property was worth nothing. Moreover, she produced evidence that her siblings, the only persons to whom her interest might be sold, were unwilling to buy. She thus presented far more compelling evidence of the fair market value of her interest than the rigid calcula-

tion produced DHS, and the administrative judge should have concluded that her fractional interest fell below the $1,000 AFDC threshold.

It is apparent from plaintiff's briefs on this point that she agrees wholeheartedly with the findings of HHS. *See* Plaintiff–Appellant's Motion for Summary Judgment; Supplemental Memorandum in Support of Appellant's Motion for Summary Judgment; Memorandum in Opposition to Appellee and Third–Party Plaintiff's Motion for Summary Judgment. Moreover, DHS apparently also agrees, because it "joins in and concurs with the Memorandum in Opposition to Appellee's Motion for Summary Judgment submitted by Third–Party Defendant, Donna Shalala," the document in which the above discussion can be found. *See* Appellee and Third–Party Plaintiff Winona Rubin's Memorandum in Opposition to Appellant's Motion for Summary Judgment. Hence, DHS is deemed to have admitted that the administrative judge's decision in Golis' termination hearing was clearly erroneous and contrary to law.

Accordingly, this court grants plaintiff's motion for summary judgment, and denies the defendant's and third-party defendant's motions for summary judgment, on the issue of Golis' eligibility for AFDC and Medicaid. This court reverses the administrative judge and finds that, according to the evidence available at this time, Golis' fractional interest has a fair market value of zero. The court's decision is made without prejudice, though, to allow the state to re-assess, in accordance with the law and the market, Golis' fractional interest in the property. If Golis is presently eligible for AFDC, her benefits should be reinstated.[5]

## III. The Claims of the Class for Which Golis is the Named Representative

Having determined that Golis' fractional interest in her property is worth nothing, the court must decide if, as the plaintiff class claims, the entire system established by DHS

---

5. This court is cognizant of the fact that in circumstances such as this there is a potential for collusion between joint property owners. How-

ever, the risk of collusion goes to the issue of the recipient's "good faith" effort to sell; collusion has been neither alleged nor proven in this case.

and HHS for evaluating interests in real property is arbitrary and capricious.

### A. Consideration of Fractional Interests in Real Property

■ While Golis introduced credible evidence to support the present lack of value of her particular fractional interest, there is absolutely no evidence to support the broad assertion that fractional interests in general are inherently and always valueless. As discussed above, the value of a fractional interest must be determined on a case-by-case basis, in light of variables such as utility, amenity, configuration, and location. Such interests have, in the past, been bought and sold by family members and strangers. *Pioneer Mill Co. v. Ward*, 34 Haw. 686 (1938) (purchase of 56/896 interest in land for $3000); *Campbell v. DePonte*, 57 Haw. 510, 559 P.2d 739 (1977) (purchase of 5.647 percent interest in land from heirs). Plaintiff has offered no evidence to contest this general principle, other than the statement of the real estate broker who found her particular property interest worthless. However, that broker based his conclusion on the fact that fewer than all of the owners of the property had consented to sell, thereby requiring a partition sale. He did not state that fractional interests are always inherently worthless.

■ Because there is no evidence demonstrating that fractional interests can never be available or marketable, the court finds nothing arbitrary or capricious about the state or federal regulations allowing such interests to be assessed according to those terms. The court grants the defendant's and third-party defendant's motions for summary judgment, and denies the plaintiff's motion for summary judgment, with respect to all claims concerning the viability of state and federal "availability" and "reasonable evaluation" regulations as applied to fractional interests in land.

■ However, to the extent that Hawaii's Administrative Rules allow DHS to analyze the fair market value of fractional interests according to a rigid formula based solely on fixed percentages and tax-assessed values,[6]

they contradict and violate the federal regulations requiring "fair market value" assessments to based on local real estate realities. 45 C.F.R. § 233.20(a)(3)(ii)(F)(4); *Schrader v. Idaho Dep't of Health and Welfare*, 768 F.2d 1107, 1113 (9th Cir.1985) (real property must be reasonably evaluated according to the local real estate market). Plaintiff's motion for summary judgment is granted, while defendant's and third-party defendant's motions for summary judgment are denied, as to the legality of the Hawaii Administrative Rules and procedures which incorrectly base "fair market value" solely on tax-assessed value and calculate the value of fractional interests along strict percentage lines.

### B. Similarity to SSI Program

■ The plaintiff class next asserts that AFDC regulations must be identical to SSI regulations concerning real property, in order to comport with Congressional intent. Because the AFDC "good faith effort to sell" regulation offers applicants and recipients fewer benefits than those received by SSI applicants and recipients under a similar clause, the plaintiff class asserts that the AFDC regulations must be arbitrary and capricious.

The class' argument is based on language in a House Conference Committee Report concerning Section 2626 of DEFRA, evidencing the Committee's intent to "establish[ ] an AFDC policy on real property that is similar to SSI policy." H.C.R.P. No. 861. In so writing, the Committee was describing its six-to-nine month grace period for the AFDC "good faith effort to sell" clause, which, at the time, matched the grace period in the SSI program. In 1987, SSI was amended by the 1987 OBRA to allow for an open-ended grace period under certain conditions.

> [T]he Secretary shall not require the disposition of any real property for so long as it cannot be sold because (A) it is jointly owned (and its sale would cause undue hardship, due to loss of housing, for the other owner or owners), (B) its sale is barred by a legal impediment, or (C) as determined under regulations issued by

**6.** *See* HAR §§ 17–620–11, 17–620–12, 17–620– 13.

the Secretary, the owner's reasonable efforts to sell have been unsuccessful.

Section 9103 of 1987 OBRA.

The plaintiff class argues that, because AFDC regulations "must be consistent" with SSI regulations, see Plaintiff–Appellant's Motion for Summary Judgment at 24, the AFDC must also adopt this open-ended grace period. The class cites 57 Fed.Reg. 30143 (7/8/92), the 1992 preamble to the DEFRA regulations, to support its interpretation of HHS's duty in this area.

This court can find no statutory or legislative history language requiring HHS to conform all aspects of AFDC policy to SSI policy. First, the court notes that the 1987 OBRA amendment applied only to SSI; it makes no mention of AFDC policies and remains silent on the issue of conformity between various welfare programs. Secondly, both H.C.R.P. No. 861 and the Federal Register page cited by the class use the phrase "similar to SSI"; there is no language mandating that the two programs have identical, as opposed to similar, eligibility thresholds. In fact, in the Federal Register page cited by the class as evidence of HHS's recognition of its obligation to match AFDC regulations to SSI regulations, the Secretary actually states that, contrary to SSI policy, "we are retaining the provisions ... that a recipient will not be eligible for continued AFDC at the end of the six-to-nine month conditional payment period if the property remains unsold." Notably, the Fourth Circuit has already rejected the exact argument advanced by the plaintiff class here, finding no legislative history to support the proposition that HHS must adopt regulations governing AFDC grace periods which mirror those of SSI. Davis v. Lukhard, 788 F.2d 973, 981–82 (4th Cir.1986).

In addition, the court recognizes that SSI and AFDC are fully separate welfare programs aimed at distinct social groups with distinct problems. AFDC provides a minimal level of assistance to families with young children whose dependence on public assistance is expected to be temporary. SSI, on the other hand, was created to assure senior, blind, and disabled citizens a minimum level of income necessary for subsistence. The definition of "minimum level of subsistence" varies with the programs, as families with young children cannot be expected to require the same amount of assistance as an elderly or disabled person. Moreover, unlike needy families with children, persons receiving SSI cannot be expected to become eligible over time, as the conditions which make SSI recipients eligible for assistance are long-term and permanent. It is not at all unreasonable to conclude that Congress and the Secretary may have chosen to establish different rules for recipients of SSI versus those of AFDC, given the respective goals of each program and the needs of each population.

Finally, the regulations implementing the AFDC good faith sale grace period appear to be reasonable in their own right. The Davis court found, and this court agrees, that the Secretary's AFDC regulations implementing Section 2626 of DEFRA are a reasonable interpretation of Congressional intent as expressed in the statute and in the House Conference Report. Heckler v. Turner, 470 U.S. 184, 105 S.Ct. 1138, 84 L.Ed.2d 138 (1985) (question to decide in determination of whether federal regulations exceed or abrogate Congressional authority is not whether course Congress has set is wise, but only whether Secretary has identified that course correctly). Section 2626 of DEFRA expressly delegates to the Secretary the ability to define the phrase "period or periods" as used in the statute with respect to good faith selling exemption time. 42 U.S.C. § 602(a)(7)(B). The Secretary's definition of the term of "period or periods" is "entitled to more than mere deference or weight." Schweiker v. Gray Panthers, 453 U.S. 34, 44, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460 (1981) (where there is express delegation, Congress has entrusted to Secretary, not the courts, primary responsibility for defining statutory term). Thus, this court may only vacate the Secretary's finding if it determines that she has exceeded her authority or has acted in an arbitrary or capricious fashion. Id.

As discussed above, the H.C.R.P. No. 861 sets forth the Congressional intent behind

the statute:[7]

> The conference agreement follows the House bill with a modification establishing an AFDC policy on real property that is similar to SSI policy. The managers intend that by regulation, real property which the family is making a good faith effort to sell would be exempt for six months (with State option for an additional 3 months) but only if the family agrees to use the proceeds from the sale to repay the AFDC paid. Any remaining proceeds would be considered a resource.

The regulations which the Secretary promulgated pursuant to Section 2626 closely track Congressional language. 45 C.F.R. § 233.-20(a)(3)(B)(5) provides that states must exclude from eligibility determinations:

> Real property for a period of six months (or at the option of the State, nine months) which the family is making a good faith effort (as defined in the state plan) to sell subject to the following provisions. The family must sign an agreement to dispose of the property and to repay the amount of aid received during such period that would not have been paid at the beginning of such period, but not to exceed the amount of net proceeds of sale. If the property has not been sold within the period, or if eligibility stops for any other reason, the entire amount of aid paid during such period will be treated as overpayment.

Because the language of this regulation so carefully follows the language of Section 2626 and the Conference Report, this court cannot conclude that the grace period regulation contradicts or exceeds the statute's authority or the intent behind it. As stated by the Fourth Circuit, "although the Secretary's interpretation of the term 'period or periods' to mean grace period of limited duration may not be the only interpretation possible, the interpretation is reasonable and must be upheld. . . . If Congress in fact intended a contrary interpretation, we do not find it, and any such contrary intention as may be argued is certainly not so clearly expressed that we can override the deference which we must ordinarily accord to such explicitly authorized administrative regulations." *Davis*, 788 F.2d at 982. Accordingly, the court grants the motions of defendant and third-party defendant for summary judgment, and denies the motion of the plaintiff class for summary judgment, as to the viability of the HHS regulations.

The Hawaii regulations governing conditional exemptions for good faith sale are patterned on the HHS regulations and use nearly identical language. Accordingly, this court must also uphold the Hawaii regulations. *Davis*, 788 F.2d at 982 (court must uphold Virginia regulations which tracked federal regulations, after finding that federal regulations were reasonable). The court grants the defendant's motion and the third-party defendant's motion for summary judgment, and denies the plaintiff class' motion for summary judgment, as to the legality of the Hawaii Administrative Rules governing good faith sale in Hawaii.

The court notes that the plaintiff class has only challenged the federal and state AFDC regulations on the basis that the AFDC grace period does not match the SSI grace period provision; plaintiffs have not attacked the AFDC regulations on the grounds that the terms of the "good faith effort to sell" provisions are themselves arbitrary and capricious.[8] Under the terms of 45 C.F.R. § 233.20(a)(3)(B)(5) and HAR § 17–620–7(a)(15), a recipient who succeeds in selling her property must repay the government for all benefits received during the six months, up to the amount of the sale price. If,

---

**7.** Because the Conference Report represents the final statement of terms agreed upon by both houses of Congress, it is the most persuasive evidence of Congressional intent, next to the statute itself. *Demby v. Schweiker*, 671 F.2d 507, 510 (D.C.Cir.1981).

**8.** Plaintiff does briefly complain about the effects of these provisions in a footnote. *See* Plaintiff-Appellant's Motion for Summary Judgment at 11 n. 10. However, her complaint is couched as an example of problems with the federal "availability" scheme; it is not a direct challenge to the "good faith effort to sell" provisions themselves. The court has already found that, because plaintiff's arguments concerning the availability principle are premised on the faulty assumption that fractional interests are always and inherently unmarketable, summary judgment in favor of the defendant and third-party defendant is appropriate on this issue.

however, she fails to sell the property, whether or not she has made a good faith effort to do so, she must reimburse the government for all benefits received during the six months. In short, irrespective of the outcome of her efforts, if any, to sell the property, she must reimburse the government for six months of overpayment. The court does not at this time decide whether this payment scheme would be arbitrary and capricious.

## CONCLUSION

For the reasons stated above, the court (1) GRANTS the plaintiff's motion for summary judgment, and DENIES the defendant's and third-party defendant's motions for summary judgment, as to plaintiff's individual capacity claims regarding her eligibility for AFDC and Medicaid: the decision of the administrative judge is hereby REVERSED. This grant of summary judgment is made without prejudice to the state; in the event the state chooses to re-evaluate lawfully Golis' fractional interest and concludes that her interest is worth more than $1000, the state may adjust Golis' benefits accordingly; (2) GRANTS the plaintiff's motion for summary judgment, and DENIES the defendant's and third-party defendant's motions for summary judgment, as to the issue of Hawaii's use of rigid regulations concerning "reasonable evaluation" of fair market values of real property and fractional interests thereof; (3) GRANTS the defendant's and third-party defendant's motion for summary judgment, and DENIES plaintiff class' motion for summary judgment, as to all other issues in this case.

IT IS SO ORDERED.