Nancy and Lyle STRICKLAND, Plaintiffs,

v.

COMMISSIONER, MAINE DEPARTMENT OF HUMAN SERVICES, Defendant,

v.

Mike ESPY, Secretary, United States Department of Agriculture, Third–Party Defendant.

Civ. No. 93–189–P–H.

United States District Court, D. Maine.

April 8, 1994.

Rufus E. Brown, Portland, ME, Jack B. Comart, Pine Tree Legal Assistance, Inc., Augusta, ME, for plaintiffs.

Lisa C. Fink, Asst. Atty. Gen., Augusta, ME, for defendant.

John B. Koch, U.S. Dept. of Agriculture, Washington, DC, David R. Collins, Asst. U.S. Atty., Portland, ME, for third-party defendant.

MEMORANDUM OF DECISION

HORNBY, District Judge.

This case presents a single issue: Can Congress change the law, simply by directing that it be so in legislative history, without amending the pertinent statutory language? The unvarnished answer is no.

BACKGROUND

Approximately 1.4% of all food stamp households nationwide receive income from self-employment. Of the 60,000 households that receive food stamps in the State of Maine, approximately 3% receive income from self-employment. The plaintiffs Nancy and Lyle Strickland are one such household. They run a small construction business performing excavation work, septic system installations, driveway repairs, etc. They fell upon hard times in 1990, when the recession hit their area. They applied for and received

food stamps. In July of 1993, however, their eligibility was cut off.[1] If the Stricklands are allowed to take depreciation on their construction equipment, their self-employment income will qualify them for food stamps. If they are denied all depreciation, however, their self-employment income is high enough to disqualify them for food stamps. This circumstance generates the question for decision: Is depreciation of capital assets used in a trade or business to be taken into account in determining self-employment income?

The parties have stipulated all the relevant facts. The plaintiffs, the Commissioner of Maine's Department of Human Services and the Secretary of the United States Department of Agriculture have all moved for judgment on the stipulated record.

## DISCUSSION

It is not up to me to determine appropriate accounting principles in this case. It seems apparent that generally accepted accounting principles require some allowance for depreciation in determining self-employment income for a business that uses capital assets. The plaintiffs have pointed out other government programs ranging from the Internal Revenue Service to the Social Security Administration to demonstrate that depreciation is commonly considered this way. The Secretary of Agriculture has pointed me to the Aid to Families with Dependent Children program to show that in at least one instance it is not. Congressional action, however, has preempted the issue for food stamps.

According to the Secretary of Agriculture's own legal memorandum, the Food Stamp Program began with federal legislation in 1964. Mem. in Supp. of Third–Party Def.'s Mot. for J. on a Stipulated R. at 11 (citing Food Stamp Act of 1964, Pub.L. No. 88–525, 78 Stat. 703 (Aug. 31, 1964)) (hereinafter "Third–Party Def.'s Mem."). In that legislation, according to the Secretary, Congress restricted food stamps to households of limited means, but made no effort to define income. *Id.* The Secretary, therefore, created program rules defining eligibility. In 1971, by statute, Congress directed the Secretary to establish uniform standards of eligibility.

*Id.* at 12 (citing Food Stamp Act Amendments, Pub.L. No. 91–671, § 4, 84 Stat. 2048 (Jan. 11, 1971)). As a result, the Secretary then ordered that income would be defined to include "net income from self-employment, which shall be the total gross income from such enterprise ... less the cost of producing net income." *Id.* (citing 7 .C.F.R. § 273.-1(c)(1)(i)(b); 36 Fed.Reg. 14102, 14107 (July 29, 1971)). The Secretary directed that this offsetting cost of producing income would not include "depreciation." *Id.* So far so good.

In 1977, Congress passed the Food Stamp Act of 1977, Pub.L. No. 95–113, Title XIII, 91 Stat. 958 (Sep. 29, 1977)—according to the Secretary of Agriculture, "the most comprehensive and detailed statutory revision of the Food Stamp Program ... since its inception." *Id.* at 13 (quoting 43 Fed.Reg. 18874 (May 2, 1978)). For the first time Congress specified *in the statute* that program income was not to include the costs of producing that income. 7 U.S.C. § 2014(d)(9). The statutory language did not itself define the term "costs." The Secretary of Agriculture, however, responded to a statement in the Report of the House Committee on Agriculture that drafted the law that "the Department would be expected to revise its regulations in this regard to allow some form of depreciation in arriving at 'net' business income." H.R.Rep. No. 464, 95th Cong., 1st Sess. 25 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1704, 1978, 2001–02. According to the Secretary it was in response to this directive that regulations were then promulgated allowing depreciation as a cost in calculating self-employment income. Third–Party Def.'s Mem. at 14 (citing 43 Fed.Reg. 47846, 47912 (Oct. 17, 1978)). Still so far so good.

Then in 1980, a House Conference Committee Report stated that the conferees "intend that the Secretary no longer permit depreciation to be subtracted in determining net self-employment income." H.R.Conf. Rep. No. 957, 96th Cong., 2d Sess. 29 (1980), *reprinted in* 1980 U.S.C.C.A.N. 843, 1057, 1069–70. Congress passed no legislation to carry out this intent, however: 7 U.S.C. § 2014(d)(9), the provision that specified that

---

1. The Stricklands are presently receiving food stamps pending resolution of this litigation.

the costs of producing income must be subtracted from self-employment income, remained unchanged. The Secretary nevertheless eliminated depreciation entirely, "in response to [the Committee's] directive." Third–Party Def.'s Mem. at 15 (citing 46 Fed.Reg. 4642, 4646 (Jan. 16, 1981) and 47 Fed.Reg. 17756, 17757 (Apr. 23, 1982)). Therein lies the reason for this lawsuit.

The foregoing summary of what took place in Congress, taken almost exclusively from the Secretary's own legal memorandum, pretty much disposes of the matter. Congress enacted the relevant statutory language in 1977 and, in legislative history that the Secretary of Agriculture found compelling at the time, revealed that it expected the new statutory concept, costs of generating self-employment income, to include some allowance for depreciation. Three years later, with no change to this portion of the statute, committee members or staffers arranged to have included in the Conference Committee Report a direction to the Secretary to change the practice. It is clear, however, that Congress cannot amend legislation by committee report and that a later Congress's intent cannot change an earlier Congress's enactment. *See Pierce v. Underwood,* 487 U.S. 552, 567, 108 S.Ct. 2541, 2551, 101 L.Ed.2d 490 (1988) ("Quite obviously, reenacting precisely the same language would be a strange way to make a change."); *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 758, 99 S.Ct. 2066, 2072–73, 60 L.Ed.2d 609 (1979); *Maine Ass'n of Interdependent Neighborhoods v. Commissioner,* 946 F.2d 4, 6 (1st Cir.1991). In the absence of an amendment, Congress could have achieved the desired result by simply defining cost—in the statute—to exclude depreciation. But the views of conferees in a committee report, while politically powerful, are no substitute in court for a formal Congressional vote on a statute. *See IBEW Local 474 v. NLRB,* 814 F.2d 697, 716–17 (D.C.Cir.1987) (Buckley, J. concurring). *But See St. Amour v. Vermont Dep't of Social Welfare,* 158 Vt. 77, 605 A.2d 1340 (1992).

The Secretary also seems to argue that he should have discretion in defining the term "costs." If his interpretation truly were an act of discretion, the argument might have some appeal for this ambiguous term. Here, however, the Secretary has admittedly acted all along on what he perceived as a congressional *directive,* not as an exercise of discretion. His argument of deference to discretion could prevail only if the 1977 Congress had left the issue open, the Secretary had exercised discretion in 1977 and had then thought better of it in 1980, without being compelled in either case to reach a particular result by committee language. It is apparent that none of that ever happened. Instead, it was obvious to the Secretary what Congress meant by costs in 1977. The 1980 change was just that—a change—and neither the Secretary nor indeed the conferees made any suggestion that the Secretary was simply mistaken in the interpretation he derived from the 1977 legislation.

Finally, although the Secretary has argued that he is not required to consider purchase payments for income-producing property in assessing costs of producing income, the plaintiffs state that they agree with that position and there is, therefore, no need to pursue it further.

Accordingly, judgment shall be entered for the plaintiffs and against the Commissioner of Maine's Department of Human Services and the Secretary of the United States Department of Agriculture. The parties shall jointly prepare a form of judgment within twenty-one (21) days.

So ORDERED.