**Nancy and Lyle STRICKLAND, Plaintiffs**

v.

**COMMISSIONER, MAINE DEPART-MENT OF HUMAN SERVICES,**
**Defendant**

**and**

**Mike Espy, Secretary, United States**
**Department of Agriculture,**
**Third–Party Defendant.**

**Civil No. 95–319–P–H.**

United States District Court,
D. Maine.

April 8, 1996.

Jack B. Comart, Pine Tree Legal Assistance, Inc., Augusta, ME, for plaintiffs.

Christina Hall, Assistant Attorney General, Augusta, ME, for Commissioner, Maine Department of Human Services.

John B. Koch, U.S. Department of Agriculture, Washington, DC; for Agriculture, U.S. Sec.

**ORDER ON CROSS–MOTIONS FOR**
**JUDGMENT ON A STIPULATED**
**RECORD**

HORNBY, District Judge.

In *Strickland v. Commissioner, Maine Dep't of Human Servs.,* 48 F.3d 12 (1st Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 145, 133 L.Ed.2d 91 (1995) (*"Strickland I"*), the Court of Appeals held that in setting criteria for food stamp eligibility, the Secretary of Agriculture properly denied applicants a depreciation deduction for capital equipment they had purchased to generate their self-employment income. At the end of its opinion, the Court of Appeals footnoted: "This case does not require us to decide whether self-employed food stamp recipients must be given some alternative deduction, such as a deduction for replacement costs, in recognition of either the cost of acquiring capital goods or their consumption in the course of producing income." 48 F.3d at 21 n. 6. Not surprisingly, the implicit invitation was accepted; this second lawsuit raises that precise issue. In what will become known as *"Strickland II,"* I must decide (and undoubtedly the First Circuit soon thereafter will have to decide) the question raised by the Court of Appeals: Must the Secretary recog-

---

nize some alternative deduction for the cost of capital equipment used to generate self-employment income?

The Food Stamp statute directs the Secretary not to include the "cost of producing self-employed income" in measuring income. 7 U.S.C. § 2014(d)(9). That is the phrase that provokes both these lawsuits. At one point the Secretary had recognized capital equipment depreciation deductions under this language, but in *Strickland I* the Secre-

tary argued to me, the trial judge, that a later legislative committee report, even though unaccompanied by any pertinent statutory language, amounted to a "directive" to him, *requiring* him to amend his regulations to disallow depreciation under the term "cost." [1] *See Strickland v. Commissioner, Maine Dep't of Human Servs.*, 849 F.Supp. 818, 819 (D.Me.1994). On appeal, the word "directive" conveniently shaded into a "suggestion." [2] 48 F.3d at 20. Despite the Sec-

---

1. Here are some direct quotations from the Secretary's legal memorandum in *Strickland I*, 849 F.Supp. 818 (D.Me.1994).

> [T]he House Conference Committee *directed* the Secretary in its Report [regarding denying depreciation].... In response to this *directive*, the Secretary, on January 16, 1981, proposed a regulatory change in the treatment of depreciation to eliminate its recognition entirely.

Memorandum in Support of Third–Party Defendant's Motion for Judgment on a Stipulated Record ("Secretary's Mem. I") at 15 (citations omitted) (emphases added).

> Without reservation, exception, or ambiguity, Congress has indicated in this history that it does not want depreciation considered a cost of producing self-employment income for Food Stamp Program purposes.... The non-allowance of depreciation ... as a cost of producing self-employment income is perfectly synchronized with Congress' *directions* to the Secretary.

*Id.* at 15–16 (citations omitted) (emphasis added).

> By and large, Congress has deferred to the Secretary the responsibility of defining the term "cost of producing self-employment income." With regard to depreciation and payments of principal made to purchase income producing property, though, Congress has *directed* that they not be allowed as costs of producing self-employment income for Food Stamp Program purposes.

*Id.* at 6 (emphasis added).

> To a greater extent in the particular area of Food Stamp Program administration at issue in this case than in most, Congress has *specifically directed* which costs the Secretary should permit as costs of producing self-employment income and which costs the Secretary should disallow. 7 U.S.C. § 2014(d)(9). Congress' *direction* has been clear: for the purpose of determining income in the Program, costs of producing self-employment income *are not to include* payments of principal on the purchase of income producing property or depreciation on that property.

*Id.* at 10 (emphases added).

> *Congress has Specifically Directed the Secretary of Agriculture to not Include Payments of Principal on the Purchase of Income Producing Property, or Depreciation on that Property, as*

*Costs of Producing Self–Employment Income under 7 U.S.C. § 2014(d)(9)*

*Id.* at 11 (argument heading) (emphasis added).

These excerpts from the Secretary's legal memorandum fairly represent the argument he made to me in the trial court. At the end of his memorandum he did add a section claiming that he also had the discretion in any event to promulgate the regulation denying depreciation. His argument made clear, however, that he did not purport to have exercised such discretion:

> In an effort to explain more fully Congress' reasoning behind the 1980 directive to forbid the recognition of depreciation as a cost of producing self-employment income accompanying P.L. 96–249, the Secretary explained that allowing depreciation to be deducted from self-employment income "results in an exemption of amounts not constituting 'actual costs' to the households; households are, in a sense, given a deduction in advance for the cost of capital goods which is otherwise not allowed."

*Id.* at 22 (citation omitted) (emphasis added). In other words, this was no exercise of discretion but an effort to explain and justify what the Secretary believed he had been *ordered* to do by the conference committee—at least that is what he told me in his legal memorandum.

2. Here are excerpts from the Secretary's appellate briefs in *Strickland I*, 48 F.3d 12 (1st Cir. 1995):

> [The] USDA *did not regard the Conference Committee Report as a "directive"* to change its regulations.

Reply Brief at 9 (emphasis added). (This is a direct contradiction of what the Secretary said to me in his memorandum at 15, quoted at the outset of note 1, *supra*.)

> [T]he Secretary's regulation follows Congress' most recent *suggestion* that depreciation not be included in calculating income for food stamp purposes.

Brief for Appellant at 8 (emphasis added).

> The legislative history *suggesting* that depreciation be eliminated, *even if not binding on the agency,* manifestly qualifies as [sic] good reason for the agency to change its views.

*Id.* at 19 (emphases added).

> The ambiguous statutory language and Congress' contradictory pronouncements on how the statute should be implemented make it

retary's contrary representations to me, the Court of Appeals therefore declared itself "reluctant to presume that the Secretary ... concluded that he was *duty bound* to rewrite the rule simply because the conference committee groused about it. We think it is much more realistic to infer that the conference committee's unredacted comments served as a wake-up call, ..." (emphasis added).[3] *Id.* With a potpourri of additional metaphors, the Court of Appeals ruled that "the word 'cost' is a chameleon, capable of taking on different meanings, and shades of meaning, ...," *id.* at 19, that the legislative history failed to "suck the elasticity from the word 'cost,'" *id.* at 20, and as a result that "the remaining pieces of the puzzle fall neatly into place." *Id.* at 21. Disallowing a depreciation deduction simply adopted "a layperson's conception of cash flow" and "makes perfectly good regulatory sense." *Id.*

Now the plaintiffs want to hold the Secretary to his argument that persuaded the Court of Appeals. According to the plaintiffs, a "layperson's conception of cash flow" that permits the Secretary to ignore depreciation requires the Secretary accordingly to subtract from income at least the cash amounts they have spent to generate their self-employment income—i.e., principal payments on capital equipment. Plaintiff's Memorandum of Law in Support of Motion for Judgment on Stipulated Record ("Pl.'s Mem.") at 10–11. The Secretary demurs. He prefers discretion to consistency and now that he is back in the trial court, also has returned to arguing that the legislative history has "directed" him what to do, and that it denies him the power to recognize deduction of either depreciation or cash capital costs.[4]

I thought that the plaintiffs were right in *Strickland I,* given the Secretary's argument to me that a committee report without legislation *compelled* him to change his regulations to disallow depreciation. 849 F.Supp. at 820. The Court of Appeals concluded I was wrong. It would indeed be logical now to hold the Secretary to his adoption of a "layperson's" accounting principles and find the plaintiffs right in *Strickland II*—that cash outlays accordingly must be subtracted—but that too would be wrong. The overall thrust of *Strickland I* is discretion, not logic.

---

*impossible to discern any clear Congressional intent on how the Secretary should treat depreciation* for food stamp purposes. The legislative history does not demonstrate that any particular interpretation of the statute is mandated. Reply Brief at 6 (emphasis added).

Where, as here, Congress gives conflicting views on how a statutory term is to be interpreted, the legislative history cannot be said to evidence an "unambiguously expressed intent" sufficient to restrict the Secretary's discretion to interpret the statute.
Brief for Appellant at 12.

At a minimum the contradictory legislative history is *insufficient to establish a clear Congressional intent to override the discretion* conferred on the Secretary by the ambiguous statutory language.
*Id.* at 16 (emphasis added). Compare the second quotation in note 1, *supra,* made to me as the trial judge.

3. In *Strickland I* the Secretary told me that "the Secretary does not possess the authority on his own" to allow a depreciation deduction. Reply Memorandum in Support of Third–Party Defendant's Motion for Judgment on a Stipulated Record ("Reply Mem.") at 4–5. That certainly sounds "duty bound." Moreover, he told me that *"[w]ith the exception of depreciation,* Congress had deferred to the Secretary's judgment what costs should be permitted as deductions for Program purposes and which should not." Reply Mem. at 8 (emphasis added).

4. The Secretary now asserts:

With regard to depreciation and capital costs, though, Congress has *directed* that they not be allowed as costs for program purposes.
Memorandum in Support of Defendant's Motion for Judgment on the Stipulated Record ("Secretary's Mem. II") at 5 (emphasis added).

Congress has *specifically directed* which costs the Secretary should permit as costs of producing self-employment income and which costs the Secretary should disallow. *This direction has been clear:* for the purpose of determining income in the Program, costs of producing self-employment income are not to include capital costs.
*Id.* at 7–8 (emphases added).

The nonallowance of these [capital] costs in 7 C.F.R. § 273.11(a)(4)(ii)(D) as costs of producing self-employment income perfectly comports with Congress' *directions* to the Secretary.
*Id.* at 12 (emphasis added).

In 1980, when Congress once again addressed the particulars of 7 U.S.C. § 2014(d)(9) in P.L. 96–249 and *directed the Secretary to not allow a deduction for depreciation* as a cost of producing self-employment income,....
*Id.* (emphasis added).

Unfortunately for the plaintiffs, their better arguments were in *Strickland I.* The Secretary argues here that to recognize a deduction for the cash purchase price of capital equipment unfairly ignores the equity value of the asset the food stamp applicant then owns as a result of the purchase. Secretary's Mem. II at 16. Depreciation principles, of course, are designed in part to account for the limitations of cash-flow accounting. Rather than allow an applicant to deduct the entire cost of the equipment in the year he or she buys it, they require the purchaser to depreciate it and therefore deduct only a pro rata amount each year over the useful life of the object—approximately like rent. *Strickland I* expressly recognized that the Secretary allowed a *rental* deduction for leased equipment at the same time as he prohibited a *depreciation* deduction for purchased equipment. 48 F.3d at 21. That obvious illogic, according to the court, was a challenge to the "wisdom," not the legality, of the regulations. *Id.* But if the Secretary is not required to recognize even depreciation, he certainly cannot be *required* to recognize cash principal payments.

The plaintiffs characterize the issue for decision here in *Strickland II* as only whether the Secretary must recognize the cost of capital equipment in any form. Contending that under the statute he must choose *some* vehicle for deducting such costs, they argue that the Secretary then retains the ability to choose between recognizing cash outlays and recognizing depreciation (perhaps still hoping that, if forced to choose, the Secretary will choose depreciation). Their sequence of arguments from *Strickland I* to *Strickland*

*II* certainly is an unfortunate way to seek review of the validity of the regulation. In *Strickland I,* the plaintiffs focused on depreciation and announced at the outset of their reply memorandum that they did not dispute the proposition "that the Secretary may refuse to allow principal payments on equipment loans as a method of recognizing the costs of producing self-employment income." Plaintiff's Reply Memorandum in Support of Motion for Judgment on Stipulated Record (*Strickland I*) at 2. I took this, perhaps mistakenly, as a statement that the plaintiffs were not challenging the prohibition on deducting cash outlays, 849 F.Supp. at 820, and apparently the Court of Appeals was of the same view. *Strickland v. Commissioner, Maine Dep't of Human Servs.,* No. 94–1783 (1st Cir. Mar. 8, 1995) (order denying rehearing on grounds that the issue "was neither briefed nor argued in this court"). The argument that if depreciation is *not* to be allowed then cash outlays *must* be recognized, or vice versa, should have been made more forthrightly in *Strickland I.* Both I and the Court of Appeals accepted the premise that the plaintiffs were not attacking a refusal to recognize cash outlays, even as an alternative argument.[5] (The Secretary initially had defended the refusal to recognize cash outlays in *Strickland I* until the plaintiffs seemed not to be pursuing it. *See* Secretary's Mem. I at 23–27.) Nevertheless, the Secretary has chosen not to argue any type of estoppel, perhaps because of the Court of Appeals's footnote raising the issue and his own vulnerability to estoppel arguments.[6] Thus the question is now presented squarely.

---

5. The plaintiffs did argue in the Court of Appeals that the regulation disallowing depreciation was invalid because the Secretary had not constructed any other "systematic and rational method of recognizing capital costs." Brief for Appellees at 23. They argued that the regulations "do not take the costs of capital assets into account at all" and that "[t]he Secretary does not have the power to do this." *Id.* at 23–24. Thus, the Court of Appeals's decision in *Strickland I* appears to have been made in full recognition of the disallowance of any other form of deduction, although footnote 6 certainly muddies the waters.

6. My dissatisfaction with the plaintiffs' method of proceeding is exceeded only by my disbelief at

the Secretary's blatant change of position in his appellate argument from that which he presented to me in *Strickland I* and again presents to me in *Strickland II. See supra* notes 1–4 and accompanying text. I urge the Court of Appeals judges on the presumable appeal in this case to read the legal memoranda the Secretary has filed *in the trial court* in both *Strickland I* and *Strickland II.* Perhaps that will alleviate the concern that I "loaded" the question, 48 F.3d at 16, that I had a "[s]lant" on the issue, *id.* at 20, that I "shrug[ged] ... off" the Secretary's explanation or that I "lightly assume[d]" him to be "untutored" or a "dolt." *Id.*

Faced squarely, the plaintiffs' argument is appealing. It is hard to escape the conclusion that the purchase price of capital equipment used in a trade or business to generate self-employment income is a "cost" that must be recognized under the statutory language. Inventory is deductible, apparently regardless of how long it is held, 7 C.F.R. § 273.11(a)(4)(I), as is "interest paid to purchase income-producing property, ..." [7] *Id.* Nevertheless, the underpinnings of *Strickland I* seem to foreclose the plaintiffs' argument. *Strickland I* announced the following principle of statutory construction: "When Congress codifies language that has already been given meaning in a regulatory context, there is a presumption that the meaning remains the same." 48 F.3d at 20. *Strickland I* was talking about the language, "cost of producing self-employed income." 7 U.S.C. § 2014(d)(9). Prior to the statutory adoption of that language, the Secretary had disallowed *both* depreciation *and* principal payments on the purchase cost of capital equipment. *See* 36 Fed.Reg. 14,102, 14,107 (1971) (codified at 7 C.F.R. § 271.3(c)(1)(I)(b) (1972)); *see also* H.R.Rep. No. 95–464, 95th Cong., 1st Sess. 2 (1977), *reprinted in* 1977 U.S.S.C.A.N. 1978, 2001–02. Unlike the argument for recognizing depreciation—an argument found insufficient in *Strickland I*— *none* of the legislative history suggests any support for recognizing cash outlays for capital equipment.

Had the plaintiffs presented their argument clearly in *Strickland I*—that "cost" requires a recognition of *either* depreciation *or* cash outlays for capital equipment—they might have fared better on that appeal. But given the reasoning of *Strickland I*, I as a trial judge cannot now conclude that the Secretary is compelled to recognize the cost of capital equipment through either depreciation or cash payments. That argument will have to await a Court of Appeals decision to revisit the language and principles of *Strickland I*.

The defendants' motions for judgment on the stipulated record are **GRANTED** and the plaintiffs' motion is **DENIED**.[8]

**SO ORDERED.**

---

7. *See generally* 7 C.F.R. § 273.11(a)(4):

*Allowable costs of producing self-employment income.* (I) Allowable costs of producing self-employment income include, but are not limited to, the identifiable costs of labor, stock, raw material, seed and fertilizer, interest paid to purchase income-producing property, insurance premiums, and taxes paid on income-producing property.

(ii) In determining net self-employment income, the following items shall not be allowable as costs of doing business:

(A) Payments on the principal of the purchase price of income-producing real estate and capital assets, equipment, machinery, and other durable goods; ...

8. All parties agree that action on the motion for class certification should be deferred pending the outcome of this lawsuit (and presumably the inevitable appeal). The Clerk shall therefore endorse that motion as "No action necessary or required until a party notifies the court." Finally, although the parties requested oral argument, a request I would ordinarily honor, the issue here is controlled by the Court of Appeals's decision in *Strickland I*, and that decision speaks for itself. Regrettably, therefore, oral argument would not be helpful.